TRANSAMERICA INSURANCE COMPANY,
Appellant,

v.

Dan RAFFKIND, Appellee.

No. 8541.

Court of Civil Appeals of Texas,
Amarillo.

March 31, 1975.

Rehearing Denied April 28, 1975.

Stokes, Carnahan & Fields, Gary W. Barnard, Amarillo, for appellant.

Jack Hazlewood, Amarillo, for appellee.

REYNOLDS, Justice.

The trial court found that damages to the interior of and to furnishings in a home and to its cooling and heating system, which resulted when surface water seeped into and below the surface of the ground and entered subsurface air conditioning-heating ducts from whence it was circulated as vapor into the interior of the home, were losses covered under, and were not losses caused by or resulting from surface water that were excluded from coverage by, a homeowners insurance policy. Affirmed.

Plaintiff Dan Raffkind purchased new a brick veneer home at 3800 Danbury in Amarillo, Randall County, Texas. The home was constructed on a concrete slab foundation poured on a bed of sand. Within the home was an electric air conditioning and a gas heating down-flow system. The air conditioning-heating ducts, which were not and allegedly could not be made waterproof, were placed in the ground under the foundation and utilized to introduce cold and hot air into the home through floor registers, the return being through ceiling registers. The yard was landscaped with an earth grade that in one place caused the run-off from rain and melting snow to pond next to the foundation.

Defendant Transamerica Insurance Company issued its homeowners insurance policy insuring Raffkind's home and personal property against all risks of physical loss except for certain listed exclusions. Among the policy exclusions was:

d. loss caused by or resulting from:

(1) flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

(2) water which backs up through sewers or drains;

(3) water below the surface of the ground including that which exerts pressure on (or flows, seeps or leaks through) sidewalks, driveways, swimming pools, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors.

In consideration of an additional premium paid by Raffkind, exclusions d(2) and d(3) were eliminated.

As to the extent of liability of the insurance company, the policy provided:

SECTION I—PROPERTY SECTION

. . . Unless otherwise provided . . . liability of the Company shall not exceed: the specified Limits of Liability; nor, the actual cash value of the property at the time of loss ascertained with proper deduction for depreciation; nor, the amount it would cost to repair or replace the property with material of like kind and quality, with proper deduction for depreciation . . . . .

EXTENSIONS OF COVERAGE

REPLACEMENT COST COVERAGE —If at the time of loss the Limit of Liability applicable to the described dwelling is 80% or more of the full replacement cost of said dwelling, the coverage of the policy applicable to the building structure suffering loss is extended to include the full cost of repair or replacement (without deduction for depreciation).

While the insurance policy was in force, Raffkind noticed pronounced humidity inside his home. The humidity became so excessive in the winter of 1972–73 that the paint, wallpaper and sheetrock were ruined in places, moisture condensed into sheets of ice on the window panes, the window sills began to rot, the carpeting mildewed and the draperies developed water rings and mildew stains. The heating system malfunctioned and some rooms were cold while others were too warm. During wet weather Raffkind could hear water flowing in the ducts and, upon inspection, he found an accumulation of water in the ducts and units.

A professional engineer was retained to discover the source of the water which had invaded the system. After inspecting the Raffkind residence, the engineer illustrated his findings, which have been accepted by the parties, by the use of a diagram he prepared in the following form:

### DIAGRAMMATIC FOUNDATION SECTION SHOWING WATER PASSAGE THROUGH WALLS
#### NOT-TO-SCALE

The engineer found that the run-off water ponded next to the home ran through weep (ventilation) holes in the brick veneer into the space between the brick veneer and the slab foundation. The water passed through the crack between the floor slab and the foundation on which both the floor slab and the brick veneer rests into the earth beneath the floor slab. By capillary action the water saturated the soil to the point that some of it seeped into the non-water-tight ducts. In the natural process

of evaporation which was accelerated by use of the heating system, water vapor was discharged into the house where it was bound to cause damage.

An examination of the system by a specialist revealed to him that water and rust were present in the furnace and that rust had caused holes in the air conditioner coils. Approximately ten gallons of water were pumped out of the ducts which were "flaking off and breaking down" from water and fine sand found therein. The system was tested and found inoperative. Replacing the present system would necessitate tearing up the concrete slab and would have cost, so the trial court found at the hearing, approximately $5,000. Instead, the underground ducts were sealed and a new gas heating and cooling up-flow system of the same capacity as the original system was installed through the attic at a cost of $2,346.43. The damaged interior was repaired and the damaged furnishings were replaced.

Raffkind filed a claim to recover on the policy for the loss. The insurance company denied liability on the theory that Raffkind's loss was caused by or resulted from surface water, a noninsured loss in view of exclusion d(1). Raffkind sued to recover judgment for his damages in the sum of $11,810.45. The trial court, sitting without the intervention of a jury, found the insurance company liable under its policy for the damages to the extent of $6,446, of which $2,046 was allowed for replacement of the air conditioning-heating system. Findings of fact and conclusions of law were requested and filed.

■ The insurance company has based its appeal on four points of error, the first three of which are directed to the issue of liability and the last of which is addressed to the recovery allowed for replacement of the heating system. Initially, Raffkind has questioned the sufficiency of the points of error. He advocates that since no finding of fact has been assigned as error, Curtis v. National Cash Register Co., 429 S.W.2d 909 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.), dictates the trial court's findings are binding on the parties and must be accepted by this court. Concededly, the court's findings—and particularly the findings that the loss was not caused by the risks excluded in exclusion d(1), and that the policy liability extended to the full cost of replacement of the cooling-heating system without deduction for depreciation—have not been directly attacked; nevertheless, the points of error, together with the statements and arguments thereunder, are sufficient to present the merits of the appeal. Fambrough v. Wagley, 140 Tex. 577, 585, 169 S.W.2d 478, 482 (1943). In this connection, the presentation is sufficient as a predicate for the consideration of whether or not the trial court reversibly erred in determining that the loss sustained was not excluded under the express terms of the policy and, if that not be error, whether or not the correct measure of liability was applied for the replacement made for the original heating system.

■ As written in its original form, the homeowners insurance policy excluded coverage for all risks of physical loss caused by or resulting from water, whatever its nature or source. By the agreed endorsement, there were eliminated the loss-by-water exclusions, except for loss caused by or resulting from water of the nature or from the sources delineated in exclusion d(1). From that delineation the insurance company, to escape liability, selected and relied only on surface water as the cause of Raffkind's loss. Thus, the pivotal question for resolution becomes whether or not the water causing the loss was surface water. If so, clearly no liability attached, for such loss is excluded from coverage; otherwise, the loss was within the coverage afforded by the policy.

Surface water has not been defined by any Texas court considering the exclusion of loss by surface water from an agreement otherwise insuring against all risks of physical loss. Textual definitions have

been quoted and foreign decisions defining the term as it applies to insurance policies have been cited by the parties; yet none of the latter adjudications, including those cases researched in Words and Phrases, "Surface Water," presented facts so similar to those in the case at bar as to be determinative of the question posed. It would not necessarily be fruitful to quote any of the definitions given to surface water; suffice it to state that all of the definitions assign to surface water a terranean nature—that is, water upon the earth which does not form a well defined body of water or a natural water course—as distinguished from subterranean water which is or lies beneath the surface. With this demarcation in mind, consideration is now given to the term surface water as it is used in the policy.

Significantly, the policy itself manifests in the listed exclusions a recognition of and distinguishment between water according to its source or nature. Water upon the surface of the earth of a terranean nature is segregated by exclusion d(1), while exclusion d(3) is reserved to water of a subterranean nature. Considering that the policy itself places surface water in conjunction with "flood, waves, tidal water or tidal wave and overflow of streams or other bodies of water", we hold that the term surface water is used in the policy to mean natural precipitation coming on and passing over the surface of the ground until it either evaporates, or is absorbed by the land, or reaches channels where water naturally flows.

Applying the definition to the accepted facts in the case at bar, the water that caused Raffkind's damage was not surface water. None of the damage was attributable to the water while it was upon or passing over the surface of the ground; all of the damage was caused by or resulted from the water after it had lost its status as surface water by being absorbed into the ground. Thus, the loss was not excluded by the express terms of exclusion d(1) contained in, but the loss came within the coverage afforded by, the homeowners insurance policy, and the trial court correctly so held. The first three points are overruled.

■ The gist of the fourth point of error is that if liability existed under the policy, the liability was limited and did not extend to the cost of a heating system different from the existing system. The basis for the proposition is the Section I— Property Section statement that liability is limited to the actual cash value of the property at the time of loss with proper deduction for depreciation, or the amount of cost to repair or replace it with material of like kind and quality with proper deduction for depreciation. Overlooked in the presentment is that the statement of limited liability is preceded by the qualifying phrase, and applies only, "unless otherwise provided." It was otherwise provided in the Extensions of Coverage provisions that, if the limit of liability applicable to Raffkind's dwelling was 80% or more of its full replacement cost, the coverage provided by the policy is extended to include the full cost of replacement without deduction for depreciation. Unchallenged are the court's findings that the limit of liability applicable to the dwelling was 80% or more of the full replacement cost and that the system installed was of a kind and quality like the system it replaced. Consequently the court, by fixing the liability for the system installed at the amount it would have cost to replace the exact system, correctly applied the proper measure of liability assumed under the terms of the policy. The fourth point is overruled.

The judgment of the trial court is affirmed.

ROBINSON, J., not participating.