**FRONT ROW THEATRE, INC.,**
Plaintiff–Appellant,

v.

**AMERICAN MANUFACTURER'S MUTUAL INSURANCE COMPANIES and Kemper National P & C Companies, Defendants–Appellees.**

Nos. 92–4093, 92–4104.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 15, 1993.

Decided March 15, 1994.

Gail E. Sindell (argued and briefed), Steven S. Kaufman, Kaufman, Cumberland & Zamore, Cleveland, OH, for plaintiff-appellant.

Ronald A. Rispo, Connie M. Wymer, Brian P. Downey, William H. Baughman, Jr. (argued), Lisa G. McComas (briefed), Connie Horrigan, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for defendant-appellee.

Before: MERRITT, Chief Judge; JONES, Circuit Judge; and CELEBREZZE, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-Appellant Front Row Theatre ("Front Row" or "Plaintiff") appeals the district court's grant of summary judgment to the defendants, American Manufacturers

Mutual Insurance Co. ("American") and Kemper National P & C Companies ("Kemper", collectively "Defendants"). For the reasons stated herein, we affirm the lower court's grant of summary judgment.

## I.

Front Row Theatre is a "theater in the round" located in Highland Heights, Ohio. It was built in 1974. The theater building is surrounded by a parking lot, which is on a higher elevation. This creates a basin-like physical arrangement with the theater building in the center.

The building is encircled by an upper and lower ring of manholes in the parking lot. Water from the lot drains into the upper set of manholes, and is then carried via underground pipelines to the lower set of manholes. Pipes connecting the lower cluster of manholes then drain accumulated water away from the theater. This storm sewer system was designed to handle a five-year storm. However, on May 16, September 7, and September 9, 1990, a 50% blockage caused a less severe storm to overflow the system. The overrun was so severe as to cause backed up water to overflow the driveway and curb, and to run through the theater's front doors. This water caused nearly $150,000 worth of damage to the interior carpeting.

It is undisputed that had the pipe not been partially blocked, the system would have been able to successfully process the rainfall. Both parties also agree that the damage may have been caused both by water that entered the system and, unable to follow the usual drainage course, exited through the lower manholes, and by water that was never able to enter the system and instead flowed over the upper manholes, and downhill into the theater.

The relationship between Front Row and Kemper began on February 28, 1990, when Front Row entered into one of Kemper's insurance contracts. Front Row was insured under an all-risk policy that provided coverage for water damage to the theater but that explicitly excluded coverage for damage caused by floods. This exclusion for flood damage contained an exemption that provided for coverage if the damage was caused by water which had backed up from a sewer or drainage system.[1] At the time Front Row purchased the policy their insurance agent, William Brancovsky, indicated the limitations in coverage by stating that the policy would cover damage caused by a storm sewer back up, but would not include damage resulting from flooding.

Following the storm of May 16, 1990, Front Row filed a claim with Kemper for the water damage to its carpets. Prior to denying the claim, Kemper sent Tom Seymour, a claims representative, to investigate the physical condition of the theater and the surrounding area. On May 17, 1990, Seymour met with two representatives of Front Row, John DeMent and Ellen Zickefoose, at the theater. Following this meeting, Seymour came to the conclusion that the damage to the theater's carpeting had resulted from a flood. Seymour's conclusion formed the basis of Kemper's decision to deny Front Row's May 16 claim. Front Row was notified of this decision by letter dated July 12, 1990.

The September damage claims were submitted to Kemper by Front Row in late October 1990. Front Row also invited Kemper to reevaluate its initial decision on the May 16 claim. Seymour once again visited the theater to review the site. DeMent and Zickefoose were again in attendance, as was Mr. Alfieri, a sewage expert hired by Front Row. At this meeting Alfieri informed Sey-

---

**1.** The language of the insurance policy at issue states in relevant part:

**G. Exclusions**

   1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

     .    .    .    .

  g. **Flood**

   1) Including surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;

   2) Mudslides or Mudflow.

   But if loss or damage by fire, theft, explosion, water that backs up from a sewer or drain or sprinkler leakage results, we will pay for that resulting loss or damage.

mour that the damage to the theater had resulted after a 50% blockage in one of the drainage pipes prevented the system from functioning properly. Seymour conveyed this new information to his supervisors, who once again concluded that the damage was excluded from the policy by the flood exclusion. They then hired their own expert, engineer Seymour Weiss, to determine the validity of Front Row's claims.

Weiss conducted an on-site examination of the Front Row's sewage system and concluded in a January 18, 1991, report to Seymour that the damage to the theater had occurred after water overflowed the sewage system causing flooding. Additionally, Weiss concluded that the sewage system employed by Front Row was only minimally sufficient for normal circumstances, which the geography of the theater did not provide. In light of all the information presented to it, Kemper denied all three of Front Row's claims in spite of Front Row's objections.

Plaintiff filed suit against the defendants arguing that payment was required by the terms of the policy. The district court disagreed and awarded summary judgment to the defendants. Plaintiff now appeals.

### II.

■ This court reviews a grant of summary judgment *de novo*. In other words, it employs the same test as that used by the district court to determine whether a grant of summary judgment was appropriate. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 403 (6th Cir.1992). Summary judgment is appropriately granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Meade v. Pension Appeals and Review Comm.,* 966 F.2d 190, 192–93 (6th Cir.1992). The moving party must "show that the non-

moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino,* 980 F.2d at 403. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party must, in order to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino,* 980 F.2d at 403. *See also Dotson v. U.S. Postal Serv.,* 977 F.2d 976 (6th Cir.1992).

■ When reviewing a grant of summary judgment, inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Notwithstanding this policy, in order to make a denial of summary judgment appropriate, the evidence must be more than "merely colorable." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### III.

Plaintiff presents two reasons why Kemper should pay for the damage. First, Front Row claims that the water that caused the damage was not surface water, within the meaning of the flood exclusion in the policy; thus making the exclusion inapplicable.[2] Alternatively, Plaintiff argues that even if we find that the exclusion is applicable to some of the damage that coverage should nevertheless be required because a portion of the damage was the result of water that backed up from a sewer, an explicit exception to the flood exclusion. Kemper counters, arguing that they are not required to pay for the damage to the Front Row's carpeting as it was caused entirely by surface water flooding, a risk for which they explicitly declined to assume liability.[3] We find that both par-

---

**2.** Plaintiff also argues that the fact that the sewer was partially blocked altered the nature of *all* of the water that entered the building regardless of whether it first entered the system. We find this position to be insupportable. The language of

the policy did not protect against damage caused by backed-up sewers, but against damage caused by water that backed up from a sewer.

**3.** Defendants claim that an alternative basis for the grant of summary judgment is their belief

ties present claims of questionable merit; notwithstanding this assessment, we conclude that the lower court's grant of summary judgment to the defendants was appropriate.

### A.

■ In this case, damage to the theater's carpeting resulted from a combination of events against which the Kemper policy explicitly declined to insure. Accordingly, although, as the plaintiff argues, some of the water which caused the damage to the theater was water which backed up from a sewer and thus did not fall within the definition of surface water, coverage is still not warranted because of the explicit language of the flood exclusion.

■ When damage to an insured's property is caused by both a covered and an excluded event, coverage may be expressly precluded by language in the policy. *Schroeder v. State Farm Fire & Casualty Co.*, 770 F.Supp. 558, 561 (D.Nev.1991). The parties in the within case adopted just such language.

The flood exclusion provides:

We will not pay for loss or damage caused directly or indirectly by [floods]. *Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*

J.A. at 218 (emphasis added). We read this language literally. *See* George C. Couch, *Cyclopedia of Insurance Law*, § 44A:2 (2nd ed. 1981) ("Exceptions and exclusions in a policy of public liability insurance must be given effect according to their express terms. . . . [A] court cannot rewrite the contract of the parties"). Under the language of the Kemper/Front Row policy, where a flood is a partial cause of property damage, Kemper is not required to pay. Because Kemper specifically opted out of liability when a flood was a contributing cause of damage, we conclude that the damage to Front Row's carpeting was not included in the policy's cover-

age. Thus, the district court appropriately awarded summary judgment to the defendants.

### B.

In concluding that coverage is mandated by the language of the policy, we expressly reject the over-inclusive definition of surface water that is urged upon us by the defendants. We similarly disregard the under-inclusive definition of the phrase "water that backs up from a sewer," which the defendants urge, and the over-inclusive definition of this same phrase, offered by the plaintiff.

#### 1. SURFACE WATER

With regard to surface water, the defendants assert that all of the water that damaged the theater's carpeting was surface water because it had to travel across the theater's driveway before actually entering the theater building. The district court accepted this assertion. We do not.

■ Surface water is "water from melted snow, falling rain, or rising springs, lying or flowing naturally on the earth's surface, not gathering into or forming any more definite body of water than a mere bog, swamp, slough or marsh. . . . Surface water . . . is not of a substantial or permanent existence, has no banks, and follows no defined course or channel." *Heller v. Fire Ins. Exchange*, 800 P.2d 1006, 1008–09 (Col.1990) (footnotes omitted). *See also Transamerica Ins. Co. v. Raffkind*, 521 S.W.2d 935, 939 (Tex.App. 1975). Moreover,

surface waters are commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence. Such waters are lost by percolation, evaporation, or *by reaching some definite water-course* or substantial body of water in which they are accustomed to and do flow with other waters.

that the Front Row improperly maintained the sewer system. However, there is no evidence of this in the record, and it is therefore an inappropriate basis for affirming the lower court's decision.

*Fenmode v. Aetna Casualty & Surety Co.,* 303 Mich. 188, 6 N.W.2d 479, 481 (1942) (emphasis added).

Thus, contrary to the defendants' position, we find that some of the damage caused to the theater's carpeting was not caused by "surface water," as some of the water entered the sewer system and then exited through the lower manhole before entering the building. J.A. at 442, 539. Some of the water, however, never entered the sewer system at all before entering the building. J.A. at 452. Consequently, we conclude that this water retained its character as surface water, and was excluded from policy coverage.

### 2. WATER THAT BACKS UP FROM A SEWER

■ We now turn to the definition of the phrase "water that backs up from a sewer." Plaintiff argues that under the policy's language the mere presence of the backed up sewer required that any subsequent damage to the theater be compensated by Kemper. We reject Plaintiff's attempts to subtly alter the language of its policy. The policy did not provide coverage for a backed up sewer, but instead for damage caused by water that backs up from a sewer. Accordingly, we reject the plaintiff's over-inclusive definition of the phrase. Plaintiff's claim that the focus should be on the fact that the sewer backed up, and not on whether the water actually exited the lower manhole is without merit. *See Arcon Corp. v. Liberty Mut. Ins. Co.,* 591 F.Supp. 15, 21 (D.C.Tenn.1983) ("The insurer has a right to assume that the risks [it] assumes shall not be enlarged.").

■ We similarly reject the defendants' under-inclusive definition of the phrase "water that backs up from a sewer." The defendants attempt to limit the scope of the "water that backs up from a sewer" exception to water that actually backed up into the building. However, we find no reason to apply such a restrictive meaning where no such limitation was included in the plain language of the policy. In addition, we reject the defendants' claim that the exception only applies to water that actually reverses its flow in the pipes.

In *Gammons v. Tenn. Farmers Mut. Ins. Co.,* No. 85–334–II, 1986 WL 13039 (Tenn. App., Nov. 19, 1986) (unpublished), the court found that "the verb 'to back up' means 'to rise and flow backwards or overflow adjacent areas [clogged pipes caused rain water to back up into the house].' *Webster's Third New International Dictionary,* 160 (1970)." Application of this definition led the court to conclude that

> the phrase "water which backs up through sewers or drains" refers simply to water in a sewer or drain that flows in a direction opposite to the intended and usual flow.

Kemper urges that a similar conclusion be reached in the within case. We are unpersuaded by their argument. The language of the policy at issue in *Gammons* required that an exclusion from coverage existed for "water which backs up *through* sewers or drains." While similar to the language at issue in the instant case, the *Gammons* language differs in one crucial respect. The Kemper policy did not require that water back up *through* a sewer or drain, only that it back up *from* one.

■ In the instant case, both the expert for the plaintiff and the defendant's expert testified that it was possible that damage to the interior of the theater was caused in part by water which had exited the lower manhole. J.A. at 442, 539. It was found that the 50% blockage in the pipes may have caused water which had initially entered the sewage system to be diverted back up out of the lower manhole and into the front doors of the theater. We find that this occurrence clearly falls within the definition of "backs up," thus leading us to the conclusion that a portion of the damage to Front Row's carpeting was caused by water which backed up from a sewer. The exception to the flood exclusion in the Kemper/Front Row policy therefore applied to that portion of the damage caused by water that entered the sewer system before entering the doors of the building.

Despite our conclusion that a portion of the damage to the theater fell within the "water that backs up from a sewer" exception, however, we cannot agree with Plaintiff that this conclusion mandates a ruling in their favor. As discussed above, a portion of the damage to the theater was also caused by

surface water flooding. Thus, the language of the policy that specifically barred coverage where flooding was a contributory cause governs, and precludes payment.

## IV.

For the foregoing reasons we affirm the lower court's grant of summary judgment to the defendants. Damage to the theater's carpeting was caused both by surface water, and by water that backed up from a sewer. However, under the specific language of the policy in the instant case where, as here, a contributing cause of the damage was a flood, Kemper explicitly contracted out of liability.