Opinion issued December 16, 2004
     









In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00708-CV




VALLEY FORGE INSURANCE COMPANY, Appellant

V.

HICKS THOMAS & LILIENSTERN, L.L.P., Appellee




On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2002-06594




O P I N I O N
          In this first-party insurance-coverage dispute, Valley Forge Insurance Co.
appeals the trial court’s summary judgment finding that the flood, surface water,
underground water, and weather conditions exclusions in the premises insurance
policy held by Hicks Thomas & Lilienstern, L.L.P. (the law firm) did not apply.
          Valley Forge contends the trial court erred in rendering summary judgment for
the law firm while denying summary judgment for Valley Forge. Because we
conclude that the trial court erred as a matter of law in finding that the policy
provided coverage, we reverse and render judgment for Valley Forge.
Facts
          The parties stipulated to the following facts. On June 9, 2001, as a result of the
heavy rains generated by Tropical Storm Allison, Buffalo Bayou overflowed its banks
and flooded the entire downtown Houston area. Water rushed into the Albert Thomas
Convention Center, broke through an interior basement wall of that building, flowed
into a downtown parking garage, then into the pedestrian tunnel system, and finally
poured into the Bank of America building located at 700 Louisiana Street. The water
that poured into the basement of the Bank of America building damaged the electrical
equipment that supplied power to the entire building. As a result, the building was
closed from June 9, 2001 until July 2, 2001, and the law firm was forced to conduct
its business from an alternate interim location. 
          The law firm had purchased a premises insurance policy from Valley Forge that
included coverage for up to 30 days’ worth of lost business income and extra
expenses if the firm suffered losses from a covered peril. However, the policy also
contained a provision specifically excluding losses due to flood, surface water,
overflow of any body of water, or from water under the ground surface.
          When Valley Forge denied the law firm’s claim for $373,074.47 in lost
business income and $22,263.07 in extra expenses, the law firm sued Valley Forge
for breach of contract and breach of the duty of good faith and fair dealing. The trial
court rendered partial summary judgment ruling that the losses were covered under
the policy and a final judgment awarding the law firm $395,537.54 in damages plus
interest and attorney’s fees of $150,000.
Discussion
          Valley Forge contends in two intertwined issues that the trial court erred in
rendering summary judgment for the law firm and in denying its motion for summary
judgment because (1) there was no damage to the covered premises—suite 1700, not
the building itself; (2) the lead-in clause and the specific exclusions should be read
together, and Valley Forge is not estopped from basing its declination on both; (3) the
damage to the premises was caused by flood water and/or surface water, perils
excluded from coverage under the policy; and (4) the weather and underground water
exclusions are also applicable.
          The law firm argued to the trial court and to this Court that, by the time the
water entered the Bank of America building, its character had changed from that of
flood or surface water to “plain old generic water.” It further argues that Valley
Forge is estopped from claiming any reasons for declining coverage that were not
expressly set out in its letter of October 21, 2001.
          As a threshold matter, we note that, contrary to the law firm’s assertion, the
October 21, 2001 letter declining coverage sets out not just the exclusions for flood
and surface water, but also the lead-in clause to the named exclusions, which
specifies, “We will not pay for loss or damage caused directly or indirectly by any of
the [named exclusions]. Such loss or damage is excluded regardless of any other
cause or event that contributed concurrently or in any sequence to the loss.” 
          We further note that Valley Forge’s abbreviated letter was produced in
response to a letter from the law firm after it had received Valley Forge’s initial
acknowledgment of the claim, asking Valley Forge to “point out with more specificity
the reason that you believe coverage may not apply in this instance. It is somewhat
difficult to evaluate your reservation of rights letter when the substance of it was to
quote approximately 5 pages of language from the insurance policy.” These five
pages included, among other provisions, not only the lead-in clause and the
exclusions for flood and surface water, but also the exclusions for all types of water
and for weather conditions. Accordingly, we conclude that Valley Forge is not
estopped from relying on appeal on these other bases for its declination of coverage. 
Ultimately, however, it is only the flood and surface water exclusion that is relevant
to our inquiry.
 
          Standard of Review
          The well-settled principles governing the review of summary judgments apply
in insurance coverage cases. Hanson v. Republic Ins. Co., 5 S.W.3d 324, 327 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied). That is, a summary-judgment movant
must establish its right to summary judgment on the issues presented to the trial court
by conclusively proving all elements of the movant’s claim or defense as a matter of
law. Tex. R. Civ. P. 166a(c); Havlen v. McDougall, 22 S.W.3d 343, 345 (Tex. 2000). 
If both sides move for summary judgment and the trial court grants one motion and
denies the other, then we review both sides’ summary judgment evidence and
determine all questions presented. FM Props. Operating Co. v. City of Austin, 22
S.W.3d 868, 872 (Tex. 2000). 
The Relevant Policy Provisions
          Lost business income and additional expenses were covered under the policy
as follows:
          A. COVERAGE

          . . . .

                5. Additional Coverages

          . . . . 

                    f. Business Income
 
                    (1) We will pay for the actual loss of Business income you
sustain due to the necessary suspension of your
“operations” during the “period of restoration.” The
suspension must be caused by direct physical loss of or
damage to property at the described premises . . . caused by
or resulting from any Covered Cause of Loss.

                    g. Extra Expense
 
                    We will pay necessary Extra Expense you incur during the
“period of restoration” that you would not have incurred if
there had been no direct physical loss or damage to
property at the described premises . . . caused by or
resulting from a Covered Cause of Loss.

          . . . .

          B. EXCLUSIONS
 
1. We will not pay for loss or damage caused directly or indirectly by
any of the following. Such loss or damage is excluded regardless of any
other cause or event that contributed concurrently or in any sequence to
the loss.

          . . . .
 
                    f. Water
 
                              (1) Flood, surface water, waves, tides, tidal
waves, overflow of any body of water, or the
spray, all whether driven by wind or not.

          . . . .
 
3. We will not pay for loss or damage caused by or resulting from any
of the following. But if loss or damage by a Covered Cause of Loss
results, we will pay for that resulting loss or damage.
 
                    a. Weather Conditions
 
                    Weather conditions. But this exclusion only applies if
weather conditions contribute in any way with a cause or
event excluded in paragraph 1. above to produce the loss or
damage.

          Construction of the Policy Terms
          Courts employ the doctrine of contra proferentem, or construing a contractual
term against the insurer in favor of coverage, only when construing an ambiguous
policy provision. Evergreen Nat’l Indem. Co. v. Tan It All, Inc., 111 S.W.3d 669,
676-77 (Tex. App.—Austin 2003, no. pet.); see also State Farm Life Ins. Co. v.
Beaston, 907 S.W.2d 430, 433 (Tex. 1995) (explaining that only if insurance policy
remains ambiguous after court applies canons of interpretation should policy’s
language be construed against insurer in manner that favors coverage.). 
          An ambiguity does not arise with respect to a policy merely because the parties
advance conflicting interpretations. Grain Dealers Mut. Ins. Co. v. McKee, 943
S.W.2d 455, 458 (Tex. 1997). Whether a policy provision is ambiguous is a question
of law for the court to decide. Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980
S.W.2d 462, 464 (Tex. 1998). In making this determination, we interpret insurance
policies according to the rules of contract construction. American Mfrs. Mut. Ins. Co.
v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003). 
          If a contract can be given only one reasonable meaning, it is not ambiguous and
will be enforced as written. Kelley-Coppedge, 980 S.W.2d at 464. Our primary task
is to give effect to the parties’ intent as expressed in the policy’s plain language. See
Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). To give effect to
the parties’ intent as expressed in the policy’s plain language, we must read all parts
of a contract together. Beaston, 907 S.W.2d at 433 (citing Forbau, 876 S.W.2d at
133). In other words, we give effect to the expressed intent of the parties in the
policy as a whole, rather than interpret one provision in isolation. Id. 
          Applying these rules, we conclude that the contested policy provisions in this
case are not ambiguous. Loss of business income and extra expense are not covered
under this policy if the loss resulted from flood or surface water. We consider the
flood and surface water exclusion, in conjunction with the lead-in clause, to be
dispositive of the issue of coverage; thus, we need not address other possible reasons
that Valley Forge declined coverage. 
          Nor do we need to address whether the premises covered by the policy
consisted only of Suite 1700 or also included the common areas of the Bank of
America building that supplied access and utilities to all of the tenants. We assume,
without deciding, that the policy covered these common areas as well as Suite 1700. 
The only question remaining before us is whether the water had changed its nature
so as no longer to be considered flood or surface water, as the law firm argues, thus
affording coverage. 
          Nature of the Water
          The crux of the law firm’s argument is that the water mutated from flood water
to generic water after it entered the convention center, collapsed a wall, and flowed
into the pedestrian tunnel, i.e., the source of the water at that point was not from
Buffalo Bayou, but from an artificial source. Clearly the trial court agreed with this
proposition. We cannot. 
          Flood and surface water are defined in pertinent part under Texas law as
follows:
Surface water is generally defined as that which is derived from falling
rain . . . and is diffused over the surface of the ground. . . . Floodwaters
are those which, generally speaking, have overflowed a river, stream or
natural water course and have formed a continuous body with the water
flowing in the ordinary channel. . . . Such waters are not divested of
their character as surface waters by reason of their flowing from the land
on which they first make their appearance onto lower land in obedience
to the law of gravity.

Sun Underwriters Ins. Co. v. Bunkley, 233 S.W.2d 153, 155 (Tex. Civ. App.—Fort
Worth 1950, writ ref’d). At times, Texas courts have held that flood or surface water,
by the time it causes property damage, is no longer flood or surface water. See, e.g.,
Transamerica Co. v. Raffkind, 521 S.W.2d 935, 936 (Tex. Civ. App.—Amarillo
19785, no writ) (holding that surface runoff absorbed into the ground and circulating
as vapor in homeowner’s air-conditioning ducts had lost status as surface water); see
also State Farm Lloyd’s v. Marchetti, 962 S.W.2d 58, 61 (holding that losses
sustained by homeowner caused by water that had lost its status as surface water after
flowing into underground sewer lines). Two factors distinguish these cases from the
one before us. First, in these cases, the composition of the water itself was altered,
either by flowing into a pipe and combining with sewage or by becoming vapor. 
Second, the insurance policies applicable in these cases did not contain a lead-in
clause excluding damage from flood or surface water regardless of other contributing
causes.
          Tropical Storm Allison deluged the area with rain, creating a large amount of
surface water and causing Buffalo Bayou to overflow its banks. Once the water
entered the convention center, it behaved as strong waters behave—it caved in an
interior wall and rushed onward. It did not back up into a sewer line, cause a water
main to burst, commingle with water from an underground swimming pool, or
otherwise change or dilute its nature. It simply flowed onward, as flood and surface
water is wont to do, obeying the law of gravity and flowing into man-made
underground structures. The law firm’s loss was caused by a combination of flood
and surface water; accordingly, the loss was excluded under the terms of the policy.
Conclusion
          We hold that, under the stipulated facts and in light of the pertinent policy
provisions, the insurance policy excluded the law firm’s loss from coverage.
Therefore, the trial court improperly granted the law firm’s motion for summary
judgment and improperly denied that of Valley Forge. 
 
 
          We sustain Valley’s Forge’s issues and reverse the trial court’s judgment. We
render judgment that the law firm take nothing by reason of its suit.



                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.