Opinion issued August 7, 2014



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-13-00490-CV

————————————

**PATRICK MICHAELSKI AND LYNDA MICHAELSKI, Appellants**

**V.**

**JOHN WRIGHT, PEGGY WRIGHT, GRANT DIETZ, AND REBECCA DIETZ, Appellees**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case No. 09-CV-0786**

---

### OPINION ON REHEARING

Appellants, Patrick Michaelski and Lynda Michaelski, filed suit against appellees, John Wright, Peggy Wright, Grant Dietz, and Rebecca Dietz. The Michaelskis alleged the Wrights and Dietzes flooded their home on two occasions by impounding rain water on the Michaelskis' property and diverting water from

the Wrights' property onto the Michaelskis' property. The jury found for the appellees for both occasions. In three issues on appeal, the Michaelskis argue (1) the trial court abused its discretion by denying their motion for mistrial, (2) the evidence established as a matter of law that the Wrights and Dietzes violated the Texas Water Code, and (3) the evidence is legally and factually insufficient to support the jury's finding that no negligence of the Wrights and Dietzes caused damage to the Michaelskis' home.

On June 26, 2014, we issued our original opinion in this case. On July 11, 2014, the Michaelskis filed a motion for rehearing and a motion for en banc reconsideration. We deny the motion for rehearing, withdraw our prior opinion and judgment, and issue this opinion and a new judgment in their place.[1] Our disposition remains the same.

We affirm.

### Background

Patrick and Lynda Michaelski own a home facing Clear Lake in Clear Lake Shores, Texas. John and Peggy Wright own a home on the lot to the immediate south of the Michaelskis. In early 2009, the Wrights hired Carlen Concepts, a

---

[1]  Because we have made changes to the opinion, the motion for en banc reconsideration is denied as moot. *See Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 33 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding motion for en banc reconsideration becomes moot when panel issues new opinion and judgment).

company owned and run by Grant and Rebecca Dietz, to tear down and rebuild their home. The plans for rebuilding the home involved adding enough fill to the property to raise the ground by two feet.

On April 18, 2009, the Michaelskis' neighborhood experienced heavy rainfall. About eight to ten inches fell in a four to five hour span. The first floor of the Michaelskis' home flooded during the rainstorm. On April 24, 2009, the neighborhood experienced about two inches of rainfall. The Michaelskis allege that their home flooded again on this date. On June 3, 2009, the neighborhood received about 0.6 inches of rain. Lynda Michaelski took a video showing water flowing from the Wrights' property towards the Michaelskis' property.

The Michaelskis later filed suit against the Wrights and the Dietzes, alleging, among other things, negligence and violations of the Texas Water Code. Before trial, the trial court granted the Michaelski's motion in limine, requiring the parties to obtain approval from the court before questioning any witnesses about the Michaelski's homeowner's insurance. There was evidence that Lynda Michaelski had told her homeowner's insurance provider that their house was flooded due to water rising out of the city's drainage pipes. The trial court acknowledged the statement had relevance but required the parties to seek permission first before discussing that statement.

On the third day of trial, the Michaelskis offered the testimony of Arnold "Blu" Shields, a professional contractor and remodeling specialist. Shields authenticated a document, which was admitted into evidence on the Michaelskis' request. The document was a summary of Shields's bid proposal for work to be done to the Michaelskis' home. One page of the bid proposal contained the following line: "Insured: Patrick Michaelski."

On the fifth day of trial, the Wrights called their expert on water flow and flooding, Alan Berryhill. A short time into the direct examination, the following exchange occurred:

> Q. Did you review Ms. Michaelski's statement taken within days of the storm, both storms?
>
> A. It was a statement that was related to a Nationwide Insurance claim.

The Michaelskis moved for mistrial and the jury was excused. The Wrights' attorney told the trial court that he explained multiple times to Berryhill that insurance could not be specifically mentioned. The Wrights' attorney also told the trial court that Berryhill had stated the reference to insurance was inadvertent. After deliberation, the trial court declared,

> I had taken under advisement a Motion for Mistrial trial following witness Alan Berryhill injecting insurance in violation of the Motion in Limine. I'm going to respond to that motion by denying the Motion for Mistrial but will do the following. I'm going to read this instruction to the jury when they return. "Ladies and gentlemen, I'm ordering you to disregard the question by Mr. Chandler and answer of

4

Alan Berryhill regarding any statement made by Lynda Michaelski. Do not consider the question or answer for any purpose whatsoever during your consideration of this case. The question and answer have been ordered stricken from the record." And furthermore as a sanction, I'm striking Alan Berryhill as a witness in this case.

The jury was brought in and the trial court gave the following instruction:

I'm going to give you the following instruction, which I'm asking you to please listen to carefully and follow. I am ordering you to disregard the question by Mr. Chandler and answer of Alan Berryhill regarding any statement made by Lynda Michaelski. Do not consider the question or answer for any purpose whatsoever during your consideration of this case. This question and answer have been ordered stricken from the record. Thank you.

Also during the trial, the parties disputed the source of water that flooded the Michaelskis' home. The Michaelskis presented the testimony of James W. Gartrell, Jr. as an expert on "engineering issues regarding the determination of the natural flow of surface water and the alteration thereof." Gartrell testified that, before the Wrights raised the elevation of their property in 2009, 80% of the diffuse surface water that collected in the Michaelskis' back yard would flow onto the Wrights' property and then to a drain pipe beyond the Wrights' property. Gartrell testified that, after the Wrights elevated their property, the diffuse surface water in their back yard became impounded and, in addition, water from the Wrights' property also flowed into their back yard. He opined that the impoundment of diffuse surface water in their back yard, along with the flow of

5

diffuse surface water from the Wrights' property into the Michaelskis' back yard, is what caused the flooding in the Michaelskis' home on April 18 and April 24.

The Wrights had not moved back into their home at the time of the storms in question. Rebecca Dietz, who also lives in the neighborhood, went to check on the Wrights' house after the rain stopped on April 18. When she was at the Wrights' property, she saw the Michaelskis at their home. Rebecca Dietz saw water in the Michaleskis' garage and saw water bubbling out of the drain bordering between the Michaelskis' and Wrights' yards. She also testified that Patrick Michaelski "had pointed over to the culvert and was talking about the water bubbling up out of the catch basin and talked about how the City drain couldn't handle the water and all that. It was just a really bad storm."

Carl Dietz, Grant Deitz's father, lives on the same street as the Michaelskis, but at a higher elevation. Carl Dietz testified that Patrick Michaelski brought his motorcycle over to his house to store shortly after the rain ended on April 18. Carl Dietz testified that Patrick Michaelski said about the flooding, "It's not the rain. It's the tide that's got the sewers all clogged up with high tide water and the rain water you got can't get away." Carl Deitz then drove a golf cart down to the Michaelskis' property. He testified that Lynda Michaelski was there and told him about the flooding, "It's coming up out of the drain and running right in our

6

garage." Carl Dietz drove around the neighborhood taking pictures of flooding in various areas, but did not take pictures of the Michaelskis' or Wrights' property.

Another dispute concerned whether the rainfall breached the bulkhead along the portion of the lake across from the Michaelskis' yard. Rebecca Dietz testified that the water was over the bulkhead when she went to the Wrights' property. Lynda Michaelski testified that the bulkhead had not been breached in the area in front of their yard, but that the lake had "crested the bulkhead a half a block away." Patrick Michaelski testified similarly.

Finally, the parties disputed whether there was a swale or common ditch between the Michaelski's property and the Wrights' property. The Michaelskis and their expert, Gartrell, testified that they did not see one. The Wrights testified that they paid the Dietzes to create one and the Dietzes testified that they, in fact, created it. Furthermore, the video of rainfall that Lynda Michaelski took on June 3 shows water flowing from the Wrights' property towards the Michaelskis' property, but then turning along the border between the properties and flowing in the direction of the swale.

The jury returned a verdict determining that the Wrights and Dietzes did not violate the Texas Water Code on April 18 or April 24. For the negligence claims, the jury determined that only the Michaelskis were negligent on April 18. The jury determined that no one was negligent on April 24.

**Motion for Mistrial**

In their first issue, the Michaelskis argue the trial court abused its discretion by denying their motion for mistrial.

**A.      Standard of Review**

We review a trial court's denial of a mistrial under an abuse of discretion standard. *Lewis v. United Parcel Serv., Inc.*, 175 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (citing *Till v. Thomas*, 10 S.W.3d 730, 734 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).  A trial court abuses its discretion if it acts without reference to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

**B.      Analysis**

Before trial, the trial court granted the Michaelski's motion in limine, requiring the parties to obtain approval from the court before questioning any witnesses about the Michaelski's homeowner's insurance.  There was evidence that Lynda Michaelski had told her homeowner's insurance provider that their house was flooded due to water rising out of the city's drainage pipes.  The trial court acknowledged the statement had relevance but required the parties to seek permission first before discussing that statement.

On the fifth day of trial, the Wrights called their expert on water flow and flooding, Alan Berryhill. A short time into the direct examination, the following exchange occurred:

> Q. Did you review Ms. Michaelski's statement taken within days of the storm, both storms?
>
> A. It was a statement that was related to a Nationwide Insurance claim.

The Michaelskis moved for mistrial and the jury was excused. The Wrights' attorney told the trial court he explained multiple times to Berryhill that insurance could not be specifically mentioned and that Berryhill stated the reference to insurance was inadvertent. After deliberation, the trial court declared,

> I had taken under advisement a Motion for Mistrial trial following witness Alan Berryhill injecting insurance in violation of the Motion in Limine. I'm going to respond to that motion by denying the Motion for Mistrial but will do the following. I'm going to read this instruction to the jury when they return. "Ladies and gentlemen, I'm ordering you to disregard the question by Mr. Chandler and answer of Alan Berryhill regarding any statement made by Lynda Michaelski. Do not consider the question or answer for any purpose whatsoever during your consideration of this case. The question and answer have been ordered stricken from the record." And furthermore as a sanction, I'm striking Alan Berryhill as a witness in this case.

The jury was brought in and the trial court gave the following instruction:

> I'm going to give you the following instruction, which I'm asking you to please listen to carefully and follow. I am ordering you to disregard the question by Mr. Chandler and answer of Alan Berryhill regarding any statement made by Lynda Michaelski. Do not consider the question or answer for any purpose whatsoever during your

9

consideration of this case. This question and answer have been ordered stricken from the record. Thank you.

On appeal, the Michaelskis argue that the trial court abused its discretion by denying their motion for mistrial.

The injection of the issue of insurance into a trial does not automatically create reversible error. *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 708 (Tex. 1989). Rather, a complaining party must establish that the injection of the issue of insurance was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Dennis v. Hulse*, 362 S.W.2d 308, 310 (Tex. 1962). In carrying its burden on appeal, the appellant must overcome the presumption that the jury followed the trial court's instructions. *See Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 625 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding "[w]e presume, absent evidence to the contrary, that the jury followed such an instruction" to disregard mention of insurance).

The Michaelskis recognize in their brief that "[u]nder ordinary circumstances, the injection of insurance into a trial does not automatically create reversible error." They argue, however, that there is an exception to this rule and that they fit within the exception. In support of this argument, the Michaelskis rely on *Socony Mobil Oil Co. v. Taylor*, 388 F.2d 586 (5th Cir. 1967) and *Atchison, Topeka & Santa Fe Ry. Co. v. Acosta*, 435 S.W.2d 539 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.).

In *Socony*, the trial court injected the topic of insurance into the case by asking the jurors if they had any association to the insurance industry, and striking all witnesses who did. 388 F.2d at 588. The trial court's rationale for this was no one "connected with the insurance casualty business can be a fair and impartial juror in any kind of tort case." *Id.* The defendant's counsel objected to the court's questions and requested a curative instruction, which the trial court denied. *Id.* The Fifth Circuit held, "Suggesting insurance coverage to a jury where there is no coverage surely places an irrelevant fact before the jury; and, we think, a prejudicial one." *Id.*

In *Atchison*, the plaintiff's attorney made repeated reference to the defendant company having insurance during closing argument. The defendant's attorney raised objections, seeking a mistrial or an instruction not to consider insurance in any way. 435 S.W.3d at 549. The trial court refused both. *Id.* Instead, the trial court instructed the jury "that when you consider this case, that you go only by the court's charge in governing your deliberation on this case and not any statement that any attorney might make." *Id.* On appeal, this Court recognized that it is error to disclose to the jury that a defendant has liability insurance. *Id.* "While not every casual or inadvertent reference to insurance in the course of a trial will necessitate a mistrial, where the plaintiff by artful questions attempts to convey to

11

the jury the information that the defendant probably is protected by indemnity insurance, a mistrial should be declared." *Id.*

Both of these cases stand for the proposition that when the topic of insurance is intentionally presented to the jury with no evidentiary purpose and when there is not a proper curative instruction from the trial court, then the error is reversible. *See Socony*, 388 F.2d at 588; *Atchison*, 435 S.W.3d at 549. This is consistent with the proposition that the injection of the issue of insurance into a trial does not automatically create reversible error. *See Babcock*, 767 S.W.2d at 708. Neither of these cases expressly or implicitly announce any exception to this rule. *See Dennis*, 362 S.W.2d at 309 ("Respondent argues that the mention of insurance always requires a reversal of the case, because the error is regarded as incurable. We do not agree.")

Here, the trial court gave a curative instruction to the jury to disregard the statement made by Berryhill. Accordingly, the Michaelskis must overcome the presumption that the jury followed the trial court's instruction and must show that the statement probably caused the rendition of an improper judgment. *See id.* at 310.

The Michaelskis argue they meet their burden "[g]iven the lack or paucity of evidence to support the jury's verdict." Their argument for this is the same as their argument in their second and third issues. As we explain below, we hold there is

legally and factually sufficient evidence in the record to support the jury's verdict. Accordingly, this is not a basis for determining that the jury disregarded the trial court's instruction or that the statement caused the rendition of an improper judgment.

The Michaelskis argue that their burden on appeal is only to show that the alleged error *probably* caused the rendition of an improper judgment, a lower burden than review for legal or factual sufficiency. *See id.* Even so, if the jury's determination is legally and factually sufficient, this establishes there was some rational basis for that determination. As a result, the jury's verdict alone cannot establish that an improper judgment was rendered.

The Michaelskis also argue that the record establishes that the Wrights and Dietzes "sought repeatedly to inject insurance into the case." The Michaelskis rely primarily on questions and testimony concerning whether the Michaelskis' home was below the base flood elevation level set by the Federal Emergency Management Agency. As the Wrights and Dietzes point out, however, all parties made repeated reference to the base flood elevation level and other matters the Michaelskis allege constitutes injecting insurance into the case. Moreover, the Michaelskis fail to identify any point in the record where they objected to these other alleged references to insurance. *See* TEX. R. APP. P. 33.1(a) (establishing prerequisites to presenting complaint for appellate review). If the Michaelskis are

correct that these other references constituted references to insurance, then failure to object to the other references waives any harm for the reference to which the Michaelskis did object. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (holding error in admission of testimony is deemed harmless and waived if objecting party subsequently permits same or similar evidence to be introduced without objection).

Similarly, the Wrights and Dietzes point out that the Michaelskis were the first to introduce explicit evidence of insurance. During the testimony of the Michaelskis' witness, Shields, the Michaelskis offered and the trial court admitted into evidence a summary of Shields's bid proposal for work to be done to the Michaelskis' home. One page of the bid proposal contained the following line: "Insured: Patrick Michaelski."

As the Wrights' attorney pointed out to the trial court, Berryhill's reference to insurance was ambiguous. The jury would not be able to determine from the statement who owned the insurance. As a result, to the degree that the information could prejudice the jury, the jury would not necessarily know against whom the information would be prejudicial. In contrast, Shields's bid proposal specifically identifies the Michaelskis as the insured parties. To the degree this information would be prejudicial, the evidence that the Michaelskis put in the record would have been more prejudicial than Berryhill's statement.

14

Finally, the Michaelskis argue they were harmed by the trial court's refusal to grant a new trial because, after the trial court struck Berryhill as a witness, the jury was not told Berryhill had been struck and "was left to incorrectly believe that it could consider the expert's testimony." We agree with the Wrights and Dietzes that the jury could consider Berryhill's testimony other than the statement referencing insurance.

The trial court took two actions after Berryhill referenced insurance. First, the trial court determined that, to cure the statement by Berryhill, it would instruct the jury to disregard the last question and Berryhill's answer. Second, it decided to strike Berryhill as a witness as a sanction. It is clear from the context of the first action that the trial court meant that, for the second action, Berryhill would not be permitted to testify any further. Otherwise, there would be no point in instructing the jury to disregard a specific question and answer as opposed to the whole of his testimony.

The trial court explained that its second action—striking Berryhill as a witness—was done as a sanction, not as a further attempt to cure any error resulting from the reference to insurance. Accordingly, any problems that the Michaelskis may have had with the trial court's chosen sanction is not relevant to whether any harmful error was cured by the trial court's instruction to disregard the statement.

We hold the trial court did not abuse its discretion by denying the Michaelskis' motion for mistrial. We overrule their first issue.

**Legal Sufficiency for Section 11.086 of the Texas Water Code Claims**

In their second issue, the Michaelskis argue the evidence is legally insufficient to support the jury's verdict on their claims based on section 11.086 of the Texas Water Code.

**A.    Standard of Review**

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In performing a legal-sufficiency review, we must credit favorable evidence if reasonable fact finders could credit it and disregard contrary evidence unless reasonable fact finders could not disregard it. *Id.* "If the evidence . . . would enable reasonable and fair-minded people to differ in their conclusions, then [fact finders] must be allowed to do so." *Id.* at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.* Although the reviewing court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support the verdict, if the evidence allows only

one inference, neither fact finder nor the reviewing court may disregard the inference. *Id.*

Appellants attacking the legal sufficiency of an adverse finding on an issue on which they had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The appellants must show that there is no evidence to support the fact finder's finding and that the evidence conclusively establishes the opposite of the finding. *See id.*

## B. Analysis

The Michaelskis alleged the Wrights and Dietzes caused rain water to flood their house in violation of the Texas Water Code. *See* TEX. WATER CODE ANN. § 11.086(a) (Vernon 2008). Subsection (a) of section 11.086 of the Water Code provides, "No person may divert or impound the natural flow of surface waters in this state, or permit a diversion of impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded." *Id.*

"The term surface water, as used in section 11.086, is not defined in the Water Code, but has been interpreted by Texas courts to mean water 'which is diffused over the ground from falling rains or melting snows, and [it] continues to be such until it reaches some bed or channel in which water is accustomed to

17

flow.'" *Tex. Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 277 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *Dietrich v. Goodman*, 123 S.W.3d 413, 417 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). Diffuse surface water is distinct from flood waters and from waters entering or following a defined course or channel. *Id.* at 278. Floodwaters are waters that have overflowed a natural water course but remain a continuous part of that original part of the water course. *Id.* (citing *Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern, L.L.P.*, 174 S.W.3d 254, 258 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)). Waters entering or following a defined course or channel are not considered diffuse surface water. *Id.* This includes water in a ditch, a pond, pipes, or a river. *Id.* "Thus, a landowner might divert the entire Brazos River across his neighbor's property without subjecting himself to liability under Section 11.086 of the Water Code." *Dietrich*, 123 S.W.3d at 419.

In order to recover, then, the Michaelskis were required to prove that the damage they sustained was the result of diffuse surface water and not flood water or water from a defined course or channel. *See Tex. Woman's Univ.*, 221 S.W.3d at 277. The Michaelskis' argument to the jury was that, before the Wrights raised the elevation of their property in 2009, 80% of the diffuse surface water that collected in their back yard would flow onto the Wrights' property and then to a drain pipe beyond the Wrights' property. The Michaelskis alleged that, after the

18

Wrights elevated their property, the diffuse surface water in their back yard became impounded and, in addition, water from the Wrights' property also flowed into their back yard. The Michaelskis argued that the impoundment of diffuse surface water in their back yard along with the flow of diffuse surface water from the Wrights' property into the Michaelskis' back yard is what caused the flooding in their home on April 18 and April 24.

In contrast, the Wrights and Dietzes argued that much of the neighborhood was flooded on April 18 and that the Michaelskis admitted that it was the floodwaters that damaged their property on April 18, not impounded or diverted diffuse surface water. For April 24, they argued the Michaelskis failed to establish sufficient evidence of flooding or damages from the flooding.

First, we address whether the Michaelskis can recover under their theory that water entered their back yard from the Wrights' yard. There was conflicting evidence about whether there was a swale or "communal ditch" between the Michaelskis' property and the Wrights' property. The Michaelskis and their expert, Gartrell, testified that they did not see one. The Wrights testified that they paid the Dietzes to create one, and the Dietzes testified that they, in fact, created it. Furthermore, video evidence of rainfall on June 3—a little more than one month after the two dates in question—show water flowing from the Wrights' property

towards the Michaelskis' property, but then turning along the border between the properties and flowing along the path of the swale.

Based on this conflicting evidence, the jury could have reasonably determined that there was a swale or communal ditch between the two properties. As a result, any water that flowed into this ditch between the two properties stopped being diffuse ground water.[2] *See Tex. Woman's Univ.*, 221 S.W.3d at 277. Accordingly, even if the Michaelskis were damaged by this water, they cannot recover against the Wrights for this damage under section 11.038 of the Texas Water Code. *See id.*

The same is true for any flood waters extending from the communal ditch. Flood waters extending from a defined watercourse are not recoverable under section 11.038. *See id.* The Michaelskis' only remaining basis for recovery, then, is if the record establishes as a matter of law that the change to the Wrights' property impounded water on the Michaelskis' property that previously had flowed onto the Wrights' property and that the impounded water was not a part of the floodwaters. The Michaelskis argue they established this as a matter of law because their expert testified that the Michaelskis' home was flooded by the

---

[2]    In their motion for rehearing, the Michaelskis argue that our opinion is in conflict with *Texas Woman's University v. The Methodist Hospital*, 221 S.W.3d 267 (Tex. App.—Houston [1st Dist.] 2006, no pet.). They request that, if we disagree that the two opinions are in conflict, we provide further guidance on the distinction between the two. We provide that guidance below.

impounded water and not by any flood waters and because their expert's testimony was established as a matter of law.

"The general rule is that opinion testimony, even when uncontroverted, does not bind the jury unless the subject matter is one for experts alone." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338 (Tex. 1998). A subject matter is considered one for experts or skilled witnesses alone when "the jury or court cannot properly be assumed to have or be able to form correct opinions of their own based upon evidence as a whole and aided by their own experience and knowledge of the subject of inquiry." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

The Michaelskis argue that Gartrell's testimony—"engineering issues regarding the determination of the natural flow of surface water and the alteration thereof"—is the province of expert testimony alone and that, accordingly, Gartrell's testimony was established as a matter of law. Regardless of whether an expert is required to testify specifically about the natural flow of surface water based on measurements of elevation, it is not always necessary to have expert testimony to establish flooding and its causes.

"Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729,

733 (Tex. 1984). In contrast to what Gartrell testified should have happened with the diffuse surface water and flood water, there was testimony from multiple witnesses about what actually did happen with the diffuse surface water and floodwater. A witness does not need to be an expert to testify about what he or she observed. *See* TEX. R. EVID. 701 (permitting lay witness to express opinions and inferences "rationally based on the perception of the witness"); *Morgan*, 675 S.W.2d at 733 ("Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition."). Rebecca Dietz testified that she saw the Michaelskis immediately after the storm on April 18. She saw water in the Michaleskis' garage and saw water bubbling out of the drain bordering between the Michaelskis' and Wrights' yards. She testified that Patrick Michaelski "had pointed over to the culvert and was talking about the water bubbling up out of the catch basin and talked about how the City drain couldn't handle the water and all that. It was just a really bad storm."

Another resident of the neighborhood, Carl Dietz, testified that Patrick Michaelski brought his motorcycle over to his house to store shortly after the rain ended on April 18. Carl Dietz testified that Patrick Michaelski said about the flooding, "It's not the rain. It's the tide that's got the sewers all clogged up with

high tide water and the rain water you got can't get away." Carl Dietz testified that Lynda Michaelski told him about the flooding, "It's coming up out of the drain and running right in our garage."

All of this testimony contradicts what Gartrell said should have happened based on his determinations of rainfall, high tide, and wind effects on April 18. Accordingly, Gartrell's testimony is contradicted. Because it was contradicted, the Michaelskis cannot claim that it was established as a matter of law. *See Dow Chem.*, 46 S.W.3d at 241 (holding party that bore burden of proof at trial must establish on appeal that no evidence supports fact finder's finding and that evidence conclusively establishes opposite of finding). As a result, what caused the flooding to the Michaelskis' home on both dates was a question of fact for the jury to determine. We hold the Michaelskis did not establish as a matter of law that any impounding of diffuse surface water created as a result of the Wrights' changes to their property caused the harm the Michaelskis suffered.

In their motion for rehearing, the Michaelskis argue that we have relied on "*Texas Woman's University* for the exact opposite of its holding: surface water is no longer diffused surface water and becomes flood water once it is partially diverted by an artificial 'swale' so shallow that it is difficult to even perceive."

They ask that, if we disagree with this argument, we provide further guidance on the distinction between this case and *Texas Woman's University*.[3]

The source of the Michaelskis' confusion is their conflation of two distinct legal theories discussed in *Texas Woman's University* concerning when rainwater loses it designation as diffuse surface water. A claim under section 11.086 of the Texas Water Code is only actionable if the damages are caused by diffuse surface water. *Tex. Woman's Univ.*, 221 S.W.3d at 277. Accordingly, when water ceases being diffuse surface water is a critical inquiry.

We held in *Texas Woman's University* that, "'[w]hen rainfall is under control, either by ditches, tanks, ponds, or pipes, it is no longer considered [diffuse] surface water.'"[4]  *Id.* at 278 (quoting *Dalon v. City of DeSoto*, 852 S.W.2d 530, 538–39 (Tex. App.—Dallas 1992, writ denied)). We observed that the record in that case established that the water in question "was never under the control of a river, stream, ditch, tank, pond, bank, pipe, bed, or channel. Rather . . .

---

[3]   The Michaelskis also challenge our holding that their expert's testimony did not establish as a matter of law that any diffuse surface water impounded in their back yard caused them damage. We have sufficiently addressed this matter and do not address it further.

[4]   Water joining floodwater is another way for water to lose its designation as diffuse surface water. *Tex. Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 279 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "Floodwaters are those which, generally speaking, have overflowed a river, stream or natural water course and have formed a continuous body with the water flowing in the ordinary channel." *Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern, L.L.P.*, 174 S.W.3d 254, 258 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

the water was simply rain water running off and moving by gravity." *Id.* at 279 (internal quotations omitted). Accordingly, because it did not come under control of a defined waterway, the water did not lose its designation as diffuse surface water. *See id.*

A separate argument that we considered in *Texas Woman's University* was whether the water lost the designation as diffuse surface water because it was "touched by the hands of man." *Id.* at 281. The Methodist Hospital argued that "once diffuse[] surface water becomes concentrated or channeled by manmade changes to the natural formation of the land, the water . . . is no longer diffuse[] surface water and is instead floodwater." *Id.* We rejected this argument. *Id.* We held that the "untouched by the hands of man" exception was not supported in the case law and that such an exception would render section 11.06 meaningless. *Id.*

The Michaelskis are attempting to create a new exception from our rejection of that exception. In essence, they argue that, because the ditch between their properties was manmade, water entering into it must remain diffuse surface water. But this is not what we held in *Texas Woman's University*. We held that whether water has been "touched by human hands" is irrelevant to our analysis. *See id.* In contrast, whether diffuse surface water comes under control of a defined waterway is a critical inquiry. *See id.* at 277.

The critical factor in this case to our determination that water coming from the Wrights' property to the Michaelskis' property ceased being diffuse surface water was that the jury could have reasonably determined that a ditch existed between the two properties. As a result, water that flowed into this ditch stopped being diffuse ground water. *Id.* This is true regardless of whether the ditch was manmade or naturally existing.

We overrule the Michaelskis' second issue.

### Legal and Factual Sufficiency for Negligence Claims

In their third issue, the Michaelskis argue the evidence is legally and factually insufficient to support the jury's finding that no negligence of the Wrights and Dietzes caused damage to the Michaelskis' home.

## A.  Standard of Review

The standard of review for legal sufficiency has been stated above. "When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 242. To determine whether the evidence is factually sufficient to support a finding, we must consider and weigh all evidence that was before the trial court. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We can set aside a verdict only if the evidence is so weak or if the finding is so against the great

weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.*, 46 S.W.3d at 242.

"However, we remain mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Urista v. Bed, Bath, & Beyond, Inc.*, 245 S.W.3d 591, 601 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986)). It is the province of the jury to resolve any inconsistencies in the evidence. *Id.*

## B.    Analysis

The jury charge asked the jury to determine whose negligence proximately caused the damage to the Michaelskis' home. The jury determined that, for the flooding on April 18, the Michaelskis were the only negligent parties and that each of them were 50% responsible for the damage to their home. The Michaelskis argue the evidence is legally and factually insufficient to show that they bore the responsibility for the flooding in their home on this date.

Even if we accepted this argument, however, the Michaelskis still cannot prevail. The jury was instructed on acts of God as it pertains to negligence, describing it as an occurrence "caused directly and exclusively by the violence of nature, without human intervention or cause, and could not have been prevented by reasonable foresight or care." *See Dillard v. Tex. Elec. Co-op.*, 157 S.W.3d 429, 432 n.5 (Tex. 2005) (same) (citing COMM. ON PATTERN JURY CHARGES, STATE BAR

OF TEX., TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE & INTENTIONAL PERSONAL TORTS PJC 3.5 (2012)). The jury found that neither the Wrights nor the Dietzes committed any negligent act that proximately caused the Michaelskis' harm.

Even if we agreed with the Michaelskis, then, that there was no evidence that the Michaelskis were negligently responsible for the harm suffered by their home, this does not refute the evidence that the flooding to their home was an act of God and not the result of any negligent act committed by the Wrights or the Dietzes. Accordingly, it does not establish that the jury's verdict was incorrect as to the Wrights and Dietzes. *See Dow Chem.*, 46 S.W.3d at 241 (holding party that bore burden of proof at trial must establish on appeal that no evidence supports fact finder's finding and that evidence conclusively establishes opposite of finding); *Smith v. Moody Gardens, Inc.*, 336 S.W.3d 816, 820 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding unless great weight and preponderance of evidence shows that plaintiff's injury was caused in fact by defendant's breach of duty, we must uphold the jury's verdict).

There was testimony in the record that the Michaelskis' neighborhood received eight to ten inches of rain in four to five hours on April 18. The Michaelskis' property is across the street from Clear Lake, with no houses on the other side of the street. Rebecca Dietz testified that she saw the waters of Clear

28

Lake breach the bulkhead along the beach across the street from the Michaelskis' home. Witnesses testified that both Patrick and Lynda Michaelski identified the source of the flooding in their home as flood waters rising out of the drain pipe. Photographic evidence of the Michaelskis' neighborhood showed extensive flooding in the neighborhood.

We hold that, regardless of whether the jury was correct to determine that any negligence on the part of the Michaelskis harmed their home on April 18, there is legally and factually sufficient evidence to support the jury's finding that no negligence of the Wrights and Dietzes caused damage to the Michaelskis' home. We overrule the Michaelskis' third issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.