VALLEY FORGE INSURANCE
COMPANY, Appellant,

v.

HICKS THOMAS & LILIENSTERN,
L.L.P., Appellee.

No. 01–03–00708–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 16, 2004.

Russell J. Bowman, Scott, Bowman & Stella, Dallas, TX, for Appellant.

Laura B. Rowe, John B. Thomas, Hicks, Thomas & Lillenstern, L.L.P., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

In this first-party insurance-coverage dispute, Valley Forge Insurance Co. appeals the trial court's summary judgment finding that the flood, surface water, underground water, and weather conditions exclusions in the premises insurance policy held by Hicks Thomas & Lilienstern, L.L.P. (the law firm) did not apply.

Valley Forge contends the trial court erred in rendering summary judgment for the law firm while denying summary judgment for Valley Forge. Because we conclude that the trial court erred as a matter of law in finding that the policy provided coverage, we reverse and render judgment for Valley Forge.

## Facts

The parties stipulated to the following facts. On June 9, 2001, as a result of the heavy rains generated by Tropical Storm Allison, Buffalo Bayou overflowed its banks and flooded the entire downtown Houston area. Water rushed into the Albert Thomas Convention Center, broke through an interior basement wall of that building, flowed into a downtown parking garage, then into the pedestrian tunnel system, and finally poured into the Bank of America building located at 700 Louisiana Street. The water that poured into the basement of the Bank of America building damaged the electrical equipment that supplied power to the entire building. As a result, the building was closed from June 9, 2001 until July 2, 2001, and the law firm was forced to conduct its business from an alternate interim location.

The law firm had purchased a premises insurance policy from Valley Forge that included coverage for up to 30 days' worth of lost business income and extra expenses if the firm suffered losses from a covered

peril. However, the policy also contained a provision specifically excluding losses due to flood, surface water, overflow of any body of water, or from water under the ground surface.

When Valley Forge denied the law firm's claim for $373,074.47 in lost business income and $22,263.07 in extra expenses, the law firm sued Valley Forge for breach of contract and breach of the duty of good faith and fair dealing. The trial court rendered partial summary judgment ruling that the losses were covered under the policy and a final judgment awarding the law firm $395,537.54 in damages plus interest and attorney's fees of $150,000.

## Discussion

Valley Forge contends in two intertwined issues that the trial court erred in rendering summary judgment for the law firm and in denying its motion for summary judgment because (1) there was no damage to the covered premises—suite 1700, not the building itself; (2) the lead-in clause and the specific exclusions should be read together, and Valley Forge is not estopped from basing its declination on both; (3) the damage to the premises was caused by flood water and/or surface water, perils excluded from coverage under the policy; and (4) the weather and underground water exclusions are also applicable.

■ The law firm argued to the trial court and to this Court that, by the time the water entered the Bank of America building, its character had changed from that of flood or surface water to "plain old generic water." It further argues that Valley Forge is estopped from claiming any reasons for declining coverage that were not expressly set out in its letter of October 21, 2001.

As a threshold matter, we note that, contrary to the law firm's assertion, the October 21, 2001 letter declining coverage sets out not just the exclusions for flood and surface water, but also the lead-in clause to the named exclusions, which specifies, "We will not pay for loss or damage caused directly or indirectly by any of the [named exclusions]. Such loss or damage is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the loss."

We further note that Valley Forge's abbreviated letter was produced in response to a letter from the law firm after it had received Valley Forge's initial acknowledgment of the claim, asking Valley Forge to "point out with more specificity the reason that you believe coverage may not apply in this instance. It is somewhat difficult to evaluate your reservation of rights letter when the substance of it was to quote approximately 5 pages of language from the insurance policy." These five pages included, among other provisions, not only the lead-in clause and the exclusions for flood and surface water, but also the exclusions for all types of water and for weather conditions. Accordingly, we conclude that Valley Forge is not estopped from relying on appeal on these other bases for its declination of coverage. Ultimately, however, it is only the flood and surface water exclusion that is relevant to our inquiry.

### Standard of Review

The well-settled principles governing the review of summary judgments apply in insurance coverage cases. *Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 327 (Tex. App.-Houston [1st Dist.] 1999, pet. denied). That is, a summary-judgment movant must establish its right to summary judgment on the issues presented to the trial court by conclusively proving all elements of the movant's claim or defense as a matter of law. TEX.R. CIV. P. 166a(c); *Havlen v. McDougall*, 22 S.W.3d 343, 345

(Tex.2000). If both sides move for summary judgment and the trial court grants one motion and denies the other, then we review both sides' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

### The Relevant Policy Provisions

Lost business income and additional expenses were covered under the policy as follows:

#### A. COVERAGE

. . . .

##### 5. Additional Coverages

. . . .

**f. Business Income**

(1) We will pay for the actual loss of Business income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises . . . caused by or resulting from any Covered Cause of Loss.

**g. Extra Expense**

We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises . . . caused by or resulting from a Covered Cause of Loss.

. . . .

#### B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the loss.

. . . .

**f. Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or the spray, all whether driven by wind or not.

. . . .

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

### Construction of the Policy Terms

■ Courts employ the doctrine of *contra proferentem,* or construing a contractual term against the insurer in favor of coverage, only when construing an ambiguous policy provision. *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.,* 111 S.W.3d 669, 676–77 (Tex.App.-Austin 2003, no. pet.); *see also State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995) (explaining that only if insurance policy remains ambiguous after court applies canons of interpretation should policy's language be construed against insurer in manner that favors coverage.).

■ An ambiguity does not arise with respect to a policy merely because the parties advance conflicting interpretations. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997). Whether a policy provision is ambiguous is a question of law for the court to decide. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). In making this determination, we interpret insurance policies according to the rules of contract construction. *American Mfrs. Mut. Ins.*

*Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003).

 If a contract can be given only one reasonable meaning, it is not ambiguous and will be enforced as written. *Kelley–Coppedge,* 980 S.W.2d at 464. Our primary task is to give effect to the parties' intent as expressed in the policy's plain language. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). To give effect to the parties' intent as expressed in the policy's plain language, we must read all parts of a contract together. *Beaston,* 907 S.W.2d at 433 (citing *Forbau,* 876 S.W.2d at 133). In other words, we give effect to the expressed intent of the parties in the policy as a whole, rather than interpret one provision in isolation. *Id.*

Applying these rules, we conclude that the contested policy provisions in this case are not ambiguous. Loss of business income and extra expense are not covered under this policy if the loss resulted from flood or surface water. We consider the flood and surface water exclusion, in conjunction with the lead-in clause, to be dispositive of the issue of coverage; thus, we need not address other possible reasons that Valley Forge declined coverage.

Nor do we need to address whether the premises covered by the policy consisted only of Suite 1700 or also included the common areas of the Bank of America building that supplied access and utilities to all of the tenants. We assume, without deciding, that the policy covered these common areas as well as Suite 1700. The only question remaining before us is whether the water had changed its nature so as no longer to be considered flood or surface water, as the law firm argues, thus affording coverage.

### Nature of the Water

 The crux of the law firm's argument is that the water mutated from flood water to generic water after it entered the convention center, collapsed a wall, and flowed into the pedestrian tunnel, *i.e.,* the source of the water at that point was not from Buffalo Bayou, but from an artificial source. Clearly the trial court agreed with this proposition. We cannot.

 Flood and surface water are defined in pertinent part under Texas law as follows:

> Surface water is generally defined as that which is derived from falling rain ... and is diffused over the surface of the ground.... Floodwaters are those which, generally speaking, have overflowed a river, stream or natural water course and have formed a continuous body with the water flowing in the ordinary channel.... Such waters are not divested of their character as surface waters by reason of their flowing from the land on which they first make their appearance onto lower land in obedience to the law of gravity.

*Sun Underwriters Ins. Co. v. Bunkley,* 233 S.W.2d 153, 155 (Tex.Civ.App.-Fort Worth 1950, writ ref'd). At times, Texas courts have held that flood or surface water, by the time it causes property damage, is no longer flood or surface water. *See, e.g., Transamerica Co. v. Raffkind,* 521 S.W.2d 935, 936 (Tex.Civ.App.-Amarillo 19785, no writ) (holding that surface runoff absorbed into the ground and circulating as vapor in homeowner's air-conditioning ducts had lost status as surface water); *see also State Farm Lloyds v. Marchetti,* 962 S.W.2d 58, 61 (holding that losses sustained by homeowner caused by water that had lost its status as surface water after flowing into underground sewer lines). Two factors distinguish these cases from the one before us. First, in these cases,

the composition of the water itself was altered, either by flowing into a pipe and combining with sewage or by becoming vapor. Second, the insurance policies applicable in these cases did not contain a lead-in clause excluding damage from flood or surface water regardless of other contributing causes.

Tropical Storm Allison deluged the area with rain, creating a large amount of surface water and causing Buffalo Bayou to overflow its banks. Once the water entered the convention center, it behaved as strong waters behave—it caved in an interior wall and rushed onward. It did not back up into a sewer line, cause a water main to burst, commingle with water from an underground swimming pool, or otherwise change or dilute its nature. It simply flowed onward, as flood and surface water is wont to do, obeying the law of gravity and flowing into man-made underground structures. The law firm's loss was caused by a combination of flood and surface water; accordingly, the loss was excluded under the terms of the policy.

### Conclusion

We hold that, under the stipulated facts and in light of the pertinent policy provisions, the insurance policy excluded the law firm's loss from coverage. Therefore, the trial court improperly granted the law firm's motion for summary judgment and improperly denied that of Valley Forge.

We sustain Valley's Forge's issues and reverse the trial court's judgment. We render judgment that the law firm take nothing by reason of its suit.