ACCEPTED
01-14-00677-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/11/2015 1:15:47 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00677-CV

IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/11/2015 1:15:47 PM
CHRISTOPHER A. PRINE
Clerk

PETER TSAI AND BARBARA TSAI,

*Appellants*,

v.

LIBERTY MUTUAL INSURANCE COMPANY,

*Appellee*.

ON APPEAL FROM THE 269TH JUDICIAL DISTRICT
COURT OF HARRIS COUNTY, TEXAS

**BRIEF FOR APPELLEE
LIBERTY MUTUAL INSURANCE COMPANY**

Richard A. Sheehy
State Bar No. 18178600
J. Mark Kressenberg
State Bar No. 11725900
Shelley Rogers
State Bar No. 17186250

2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1003
(713) 951-1000 – Telephone
(713) 951-1199 – Facsimile
Email: rsheehy@sheehyware.com

*Attorneys for Defendant and Appellee
Liberty Mutual Insurance Company*

*Oral Argument Requested*

## Identity of Parties and Counsel

Pursuant to Rule 38.2(a), Texas Rules of Appellate Procedure, the following is a list of all parties and counsel involved in this case. This list is included so that the Justices of this Court may evaluate possible disqualification or recusal from participation in the decision of this case on appeal:

**Counsel for Defendant and Appellee Liberty Mutual Insurance Company:**

Richard A. Sheehy
State Bar No. 18178600
Email: rsheehy@sheehyware.com
J. Mark Kressenberg
State Bar No. 11725900
Email: jkressenberg@sheehyware.com
Shelley Rogers
State Bar No. 17186250
Email: srodgers@sheehyware.com

Sheehy, Ware & Pappas, P.C.
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010
Telephone: (713) 951-1000
Facsimile: (713) 951-1199

**Counsel for Plaintiffs and Appellants Peter Tsai and Barbara Tsai**

Daniel F. Crowder
State Bar No. 00796419
Email: dfcrowder@thecrowderlawfirm.com

The Crowder Law Firm
2211 Norfolk Street, Suite 610
Houston, Texas 77098
Telephone: (713) 523-1200
Facsimile: (713) 523-1266

# Table of Contents

Identity of Parties and Counsel ............................................................................. ii

Table of Contents ................................................................................................. iii

Table of Authorities ............................................................................................. iv

Statement of the Case ............................................................................................2

Statement Regarding Oral Argument ....................................................................2

Issues Presented ....................................................................................................3

Statement of Facts .................................................................................................3

Summary of the Argument ....................................................................................8

Argument and Authorities.....................................................................................9

     A.     Plaintiffs' claim was excluded under the policy because the loss was caused by "surface water."...........................................................11

     B.     Plaintiffs' claim was excluded under the policy because the loss was caused by water under the surface. ..............................................17

     C.     The exclusion for water damage is not ambiguous............................19

     D.     The Court should affirm the summary judgment on grounds other than breach of contract. ...........................................................21

Conclusion ...........................................................................................................24

Certificate of Compliance ...................................................................................24

Certificate of Service ..........................................................................................25

# Table of Authorities

**Cases**

*Adrian Associates General Contractors v. National Surety Corp.*,
638 S.W.2d 138 (Tex. App.—Dallas 1982, writ ref'd n.r.e.)............... 17, 18, 20

*Betco Scaffolds Co., Inc. v. Houston United Cas. Insurance Co.*,
29 S.W.3d 341 (Tex. App. – Houston [14th Dist.] 2000, no pet.) .....................22

*Bunting v. State Farm Lloyds*,
2000 WL 191672 (N.D. Tex. 2000) .................................................................22

*Crocker v. American National General Insurance Co.*,
211 S.W.3d 928 (Tex. App. – Dallas 2007, no pet.) ..........................................16

*DiBello v. Charlie Thomas Ford*,
288 S.W.3d 118 (Tex. App. - Houston [1st Dist.] 2009, no pet.) ......................22

*Dietrich v. Goodman*,
123 S.W.3d 413 (Tex. App. – Houston [14th Dist.] 2003, no pet.) ............ 11, 12

*Diversified Financial Systems v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C.*,
63 S.W.3d 795 (Tex. 2001) ...............................................................................2

*Douglas v. State Farm Lloyds*,
37 F.Supp.2d 532 (S.D. Tex. 1999)..................................................................23

*Fiess v. State Farm Lloyds*,
202 S.W.3d 744 (Tex. 2006) .............................................................................19

*Gates v. State Farm County Mutual Ins. Co. of Texas*,
53 S.W.3d 826 (Tex. App. – Dallas 2001, no pet.) ..........................................22

*General Accident Insurance Co. v. Unity/Waterford Fair Oaks*,
288 F.3d 651 (5th Cir. 2002) .............................................................................9

*Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*,
327 S.W.3d 118 (Tex. 2010) .............................................................................9

*Liberty National Fire Insurance Co. v. Akin,*
927 S.W.2d 627 (Tex. 1996) ...................................................................... 22, 23

*McAfee Inc. v. Agilysys, Inc.,*
 316 S.W.3d 820 (Tex. App. – Dallas 2010, no pet.) ..........................................22

*Michaelski v. Wright,*
 444 S.W.3d 83 (Tex. App. – Houston [1st Dist.] 2014, no pet.).........................15

*National Surety Corp. v. Adrian Associates,*
 650 S.W.2d 67 (Tex. 1983) ................................................................................17

*National Union Fire Insurance Co. v. CBI Industries,*
 907 S.W.2d 517 (Tex. 1995) ..............................................................................20

*Ohio Cas. Group of Ins. Cos. v. Chavez,*
 942 S.W.2d 654 (Tex. App. - Houston [14th Dist.] 1997, writ denied)............19

*Pinnacle Anesthesia Consultants v. St. Paul Mercury Ins. Co.,*
 359 S.W.3d 389 (Tex.App.—Dallas 2012, pet. denied)......................................9

*Progressive County Mutual Insurance Co. v. Boyd,*
 177 S.W.3d 919 (Tex. 2005) ..............................................................................23

*Raburn v. KJI Bluechip Investments,*
 50 S.W.3d 699 (Tex. App. – Fort Worth 2001, no pet.).....................................12

*Republic Insurance Co. v. Stoker,*
 903 S.W.2d 338 (Tex. 1995) ....................................................................... 22, 23

*Robertson v. Home State Co. Mutual Insurance Co.,*
 348 S.W.3d 273 (Tex.App.—Ft. Worth 2011, pet. denied) .................................9

*Spicewood Summit Office Condominiums Association, Inc. v. American First
 Lloyd's Insurance Co.,*
 287 S.W.3d 461 (Tex. App. - Austin 2009, pet. denied)....................................23

*State Farm Lloyds v. Marchetti,*
 962 S.W.2d 58 (Tex. App. – Houston [1st Dist.] 1997, pet. denied) .... 14, 19, 20

*Sun Underwriters Insurance Co. v. Brinkley,*
 233 S.W.2d 153 (Tex. Civ. App. – Fort Worth 1950, writ ref'd) ......................14

*Taylor v. Allstate Ins. Co.,*
 356 S.W.3d 92 (Tex. App. – Houston [1st Dist.] 2011, pet. denied).................22

*Texas Woman's University v. The Methodist Hospital*,
     221 S.W.3d 267 (Tex. App. – Houston [1st Dist.] 2006, no pet.)............... 12, 15

*Transamerica Co. v. Raffkind*,
     521 S.W.2d 935 (Tex. Civ. App. – Amarillo 1975, no writ)............................14

*Valley Forge Insurance Co. v. Hicks Thomas & Lilienstern*,
     174 S.W.3d 254 (Tex. App. – Houston [1st Dist.] 2004, pet. denied) . 13, 15, 16,
     20

*Vest v. Gulf Ins. Co.*,
     809 S.W.2d 531 (Tex. App.—Dallas 1991, writ denied) ..................................20

**Statutes**

TEX. WATER CODE § 11.086 ................................................................................11

**Rules**

TEX. R. APP. P. 9.4(i)(3) ....................................................................................24

TEX. R. APP. P. 38.1(f) .......................................................................................22

TEX. R. APP. P. 38.2(a) ....................................................................................... ii

NO. 01-14-00677-CV

IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS

PETER TSAI AND BARBARA TSAI,

*Appellants*,

v.

LIBERTY MUTUAL INSURANCE COMPANY,

*Appellee*.

ON APPEAL FROM THE 269TH JUDICIAL DISTRICT
COURT OF HARRIS COUNTY, TEXAS

**BRIEF FOR APPELLEE
LIBERTY MUTUAL INSURANCE COMPANY**

*To the Honorable Court of Appeals*:

Defendant and Appellee Liberty Mutual Insurance Company ("Liberty Mutual") files this brief in support of a summary judgment entered in its favor in Cause No. 2013-61457-A; *Peter Tsai and Barbara Tsai v. Howard P. Monsour, Jr., et al.*; in the 269th Judicial District Court of Harris County, Texas before the Honorable Daniel Hinde, Judge Presiding.

## Statement of the Case

Plaintiffs Peter Tsai and Barbara Tsai ("Plaintiffs") brought this action against Liberty Mutual and Defendant Howard Monsour after their home suffered water damage to the hardwood floors in the living room. (C.R. 4, 24). The claim against Liberty Mutual was for insurance coverage for the loss. (*Id.*). Monsour was Plaintiffs' neighbor. Plaintiffs claim that his sprinkler system and landscaping caused the water damage. (*Id.*); *see also* (C.R. 111)(engineering report).

Plaintiffs and Liberty Mutual both filed motions for summary judgment. (C.R. 34, 172). The trial court granted Liberty Mutual's motion and denied Plaintiffs' motion. (C.R. 415, 417). The court then severed the claims against Liberty Mutual into a separate case making the summary judgment final. (C.R. 429); *see Diversified Financial Systems v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C.*, 63 S.W.3d 795 (Tex. 2001)("As a rule, the severance of an interlocutory judgment into a separate cause makes it final."). Plaintiff took this appeal from that judgment. (C.R. 442).[1]

## Statement Regarding Oral Argument

Liberty Mutual would welcome the chance to present oral argument to the Court if the Court believes that oral argument would be helpful. However, the Court may affirm the summary judgment based on settled legal principles.

---

[1] The claim against Monsour is still pending.

## Issues Presented

(1)     The trial court properly granted Liberty Mutual's motion for summary judgment because exclusions in the insurance policy barred coverage for Plaintiffs' claims.

(2)     The exclusions in the insurance policy were not ambiguous.

(3)     Plaintiffs have not preserved any challenge to the court's ruling on causes of action other than breach of contract.

## Statement of Facts

Plaintiffs lived on Hermann Lake Drive in Houston. (C.R. 49, 173). Their home was a townhouse with a zero lot line in a gated community. (C.R. 106, 113, 130). Because of the zero lot line, the side of Plaintiffs' home was next to their neighbors' yards. (*Id.*). Their neighbors to the north had installed a pool and landscaped their yard in 2007. (C.R. 106, 113). With Plaintiffs' permission, the neighbors placed a planter and a bed with a sprinkler system right next to and covering Plaintiffs' slab as part of the 2007 work. (*Id.*). Although the neighbor who did the work did not use the sprinkler system much, that situation changed in 2010 when Monsour bought the property. (C.R. 113).

In March 2012, Plaintiffs noticed "cupping" of the hardwood floors in their living room. (C.R. 107, 174). "Cupping" is an uneven appearance of the flooring where the edges of the board are higher than the center. (C.R. 111). The wood

flooring was elevated above the foundation slab surface. (C.R. 112). Plaintiffs were not certain of the cause and thought initially that the use of a steam cleaner may have caused the floor to warp. (C.R. 106. 107).

Plaintiffs had homeowners' insurance coverage with Liberty Mutual at the time of the loss. (C.R. 49). In August 2012, Plaintiffs made a claim with Liberty Mutual for the damage to the flooring. (C.R. 108); *see also* (Brief for Plaintiffs at 1)(Plaintiffs seek coverage for damages caused by water infiltration). Lisa Levy, an adjuster for Liberty Mutual, visited Plaintiffs' home on August 22 and saw that the hardwood floors were indeed buckling in the living room. (C.R. 106). She suspected that the next-door neighbor's pool, sprinkler system, and runoff from the neighbor's flower bed might be causing the damage. (C.R. 106). She hired HSA Engineers to provide an in-depth inspection and evaluation to determine the cause of the damage. (C.R. 106, 110). In turn, HSA hired Sandtech Construction to see if a problem with the plumbing was causing the damage. (C.R. 119, 124).

Sandtech inspected the premises on September 5, 2012 and concluded that the plumbing system was not the cause of the leak. (C.R. 158). HSA also inspected the premises at length and ruled out water entry through the exterior roof, windows and doors of the home. (C.R. 112, 114-16, 119). HSA then focused on the flower bed which included the sprinkler system as a potential source of the problem. (C.R. 120).

The flower bed had been built up to a level above the top of Plaintiffs' foundation. (C.R. 112, 120); (Brief for Plaintiffs at 5), *citing* (C.R. 120)(top of the foundation was below the top of the flower bed); (C.R. 112, 120); (C.R. 118, 120) (planter was about the same elevation as the top of the first level wood floor and higher than the top of the foundation slab). The engineers found that the flower bed's drainage was inadequate so that some of the excess moisture penetrated into the area on top of the slab but below the hardwood floors. (*Id.*).

Taking these factors and its other findings into account, HSA concluded that the damage was caused primarily by moisture migrating under the wood floor from the neighbor's flower bed at the north edge of Plaintiffs' property. (C.R. 116-121); *e.g.*, (C.R. 118)("investigation revealed evidence that the cupped appearance of the boards was reasonably attributed to moisture migrating under the wood floor from the planter on the north edge of the property"). The path of "least resistance" for the water was to seep over the top of the foundation and migrate to the area below the wood floors. (C.R. 120).

Plaintiffs agree with the engineers' conclusions. (Brief for Plaintiffs at 3)(the home flooded because of sprinkler water); (*Id.* at 5)(lengthy summary of HSA reports); (*Id.* at 4)(quoting adjuster's report that damage was caused by moisture migrating under the wood floor from the planter). HSA was simply "unable to locate additional moisture sources that could reasonably result in this cupped wood

condition." (C.R. 164); *accord* (C.R. 24)(Plaintiffs claim that Monsour's sprinkler system caused the water damage).

Liberty Mutual denied Plaintiffs' insurance claim after HSA finished its investigation and issued its report. (C.R. 164). The policy provided insurance coverage against risks of direct physical loss subject to coverage limits and certain exclusions. (C.R 52). The letter denying Plaintiffs' claim relied on and quoted the policy provisions which excluded from coverage any damage caused by surface water or water below the surface that seeped or leaked through a building, foundation, or other structure:

**Section 1 - Exclusions**

**A.**     We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

***

**3.     Water Damage**

Water Damage means:

**a.**     Flood, ***surface water***, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.**     [inapplicable]; or

6

**c.** *Water…below the surface* of the ground, *including water which* exerts pressure on or *seeps or leaks through a building*, sidewalk, driveway, *foundation*, swimming pool *or other structure*;

caused by or resulting from human or animal forces or any act of nature.

(C.R. 64, 65)(emphasis added). Liberty Mutual relied on these exclusions 3(a) and 3(c) to deny the claim.

After receiving the letter from Liberty Mutual, Plaintiffs brought this action against the insurance company for coverage and against Monsour, their neighbor, for negligence. (C.R. 4, 24). Plaintiffs agree that Monsour's sprinkler system and landscaping caused the water damage to their floors. (*Id.*); (Brief for Plaintiffs at 3) ("The Tsai home flooded because of sprinkler water."); (*Id.* at 5-6)(summary of HSA report). Both Plaintiffs and Liberty Mutual filed motions for summary judgment on the application of the exclusions in the insurance policy. (C.R. 34, 172). The trial court granted Liberty Mutual's motion and denied Plaintiffs' motion. (C.R. 415, 417). The Court then severed the claims against Liberty Mutual into a separate case making the summary judgment final. (C.R. 429). Plaintiffs took this appeal from that judgment. (C.R. 442).

## Summary of the Argument

The resolution of this case is simple based on the language of the policy and the undisputed cause of Plaintiffs' damages. The language of the policy is clear: "water damage" is specifically excluded from coverage if it is caused by "surface water" or "water…below the surface of the ground, including water which…seeps or leaks through a building,…foundation,…or other structure…" (C.R. 64, 65). There is no dispute that the damage to Plaintiffs' floors resulted from water that seeped into Plaintiffs' residence from their neighbor's flower bed.

The water that entered Plaintiffs' home was either "surface water" as that term is understood in law, or "water below the surface of the ground." It has to be one or the other. The water either trickled across the surface of the planter, or seeped into the planter, and then migrated into the space between the foundation and the wood flooring. The Court may, but need not, decide which water path was involved here because coverage for damage caused by both surface and sub-surface water was excluded under the policy. Thus, there can be no breach of the insuring agreement.

Plaintiffs did not challenge the Court's ruling on their claims other than breach of contract so the Court should affirm the judgment on those other claims. Even so, Plaintiffs' claims for extra-contractual relief fail with their claim for breach of contract.

**Argument and Authorities**

**The trial court properly granted Liberty Mutual's motion for summary judgment because the damage to Plaintiffs' flooring was excluded under the insurance policy.**

The burden of proof in this case is well settled. Plaintiffs have the burden to establish coverage under the terms of the insurance policy. If they prove coverage, Liberty Mutual then has to show that the loss is within an exclusion. If Liberty Mutual proves that an exclusion applies, the burden shifts back to Plaintiffs to show that an exception to the exclusion brings the claim back within coverage. *Pinnacle Anesthesia Consultants v. St. Paul Mercury Ins. Co.*, 359 S.W.3d 389, 392 (Tex.App.—Dallas 2012, pet. denied), *citing Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010); *see also Robertson v. Home State Co. Mutual Insurance Co.*, 348 S.W.3d 273, 276-77 (Tex.App.—Ft. Worth 2011, pet. denied). "Where an exclusion is specific in its language, and a loss falls within the language, Texas courts have properly held the loss to be an excluded one." (Brief for Plaintiffs at 11), *citing General Accident Insurance Co. v. Unity/Waterford Fair Oaks*, 288 F.3d 651 (5th Cir. 2002) (unpublished opinion)(applying Texas law).

Here, there is no dispute that the main source of the water that caused the damage to Plaintiffs' floors was the sprinkler system installed by their neighbor to the north. (Brief for Plaintiffs at 3)("The Tsai home flooded because of sprinkler

water."). Liberty Mutual denied the claim when it learned that the damage fell within the policy's "water damage" exclusions. Liberty Mutual's decision was supported by HSA's investigation and analysis which Plaintiffs did not and do not dispute. In fact, Plaintiffs named Monsour as a Defendant, alleging that he was negligent in the management of his sprinkler system which proximately caused the damage due to "the water infiltration." (C.R. 4, 24).

This loss fell squarely under the policy's specific policy exclusion of "water damage." Both parties agree that the damage to Plaintiffs' home was caused by "water infiltration" resulting from the neighbor's sprinkler system adjacent to Plaintiffs' foundation. (C.R. 24, 111-12). There is no evidence of any other possible source of the water. Liberty Mutual's decision to deny coverage on the basis of the exclusions was correct, and Plaintiffs, as a matter of law, could not establish an essential element of their breach of contract claim: a "breach" of the policy by Liberty Mutual.

The HSA report explained how the water from the planter that ran along the outside north wall entered Plaintiffs' home. The top of the planter was above the foundation but below the wood floor. (C.R. 112, 120). The water from the planter then migrated over the top of the foundation and under the wood floor. (C.R. 120); (Brief for Plaintiffs at 3)(water entered the home above the foundation but below the floor). This repeated water migration and infiltration below the wood flooring

10

resulted in significant and repeated wet/dry cycles. (C.R. 120-21). The humid and moist condition under the floor caused moisture in excess of what the wood could absorb and release which resulted in the warped or "cupped" condition. (*Id.*).

**A.     Plaintiffs' claim was excluded under the policy because the loss was caused by "surface water."**

The exclusion in the policy clearly applies by its terms to damage caused by surface water. (C.R. 65). Plaintiffs argue that the water that migrated under their floors was not "surface water" because it did not meet the common law definition or because of its changed status. (Brief for Plaintiffs at 12-14). They argue that for the "surface water" exclusion to apply, the damage would have to be a direct consequence of water flowing across the surface of the wood floors. (Brief for Plaintiffs at 14); (C.R. 180)(Plaintiffs' motion for summary judgment). This argument ignores the evidence in this case and misapplies the controlling case law.

The courts have discussed "surface waters" at length in the context of the common law, riparian rights and TEX. WATER CODE § 11.086 (person may not impound or divert the natural flow of surface water to damage the property of another); *see Dietrich v. Goodman*, 123 S.W.3d 413, 417 (Tex. App. – Houston [14th Dist.] 2003, no pet.)("surface water" has been used differently in different contexts). Even using Plaintiffs' definition from *Dietrich*, the water here was indeed "surface water." (Brief for Plaintiffs at 12).

11

After a discussion of the term, the Court in *Dietrich* concluded that "surface water" is "simply water or natural precipitation diffused over the surface of the ground until it either evaporates, is absorbed by the land, or reaches a bed or channel in which it is accustomed to flow." (*Id.* at 418), *citing Raburn v. KJI Bluechip Investments*, 50 S.W.3d 699, 704 (Tex. App. – Fort Worth 2001, no pet.). A "distinguishing feature" of surface water is that it is never found in a natural watercourse. (*Id.*). The Court also concluded that the "chief characteristic" of "surface water" as used in the Water Code is that "it does not follow a defined course or channel and does not gather into or form a natural body of water." (*Id.*); *Texas Woman's University v. The Methodist Hospital*, 221 S.W.3d 267, 278 (Tex. App. – Houston [1st Dist.] 2006, no pet.).

Using this analysis, the sprinkler water that migrated into Plaintiffs' home was certainly surface water. It did not evaporate on the flower bed or it would not have gone into the home; it was not absorbed by the land or it would not have gone into the home. It met the "distinguishing feature" or "chief characteristic" of surface water because it did not follow or form a natural watercourse or body of water. Indeed, even Plaintiffs appear to agree. *See* (Brief for Plaintiffs at 13) (another chief characteristic of surface water is that it does not maintain its identity and existence as a body of water which distinguishes it from water flowing in a

12

natural watercourse).[2]

The sprinkler system placed excessive water on the surface of the flower bed and planter. That surface was above the foundation but below the wood floors. The water migrated by gravity taking the path of least resistance which was under the flooring. There, it caused a condition that resulted in wet/dry cycles in that area, which in turn caused the wood boards to warp. The water was diffused over the surface of the flower bed and planter and reached the area below the flooring by gravity. The water did not flow through or reach any "natural channel."

This Court in *Valley Forge Insurance Co. v. Hicks Thomas & Lilienstern*, 174 S.W.3d 254 (Tex. App. – Houston [1ˢᵗ Dist.] 2004, pet. denied) dealt with the same policy exclusion. In that case, Buffalo Bayou flooded downtown Houston after Tropical Storm Allison. Water rushed through several downtown buildings and eventually reached the building where the law firm had its offices. The water damaged the electrical system and the firm had to move to temporary offices to continue its law practice. The firm made a claim under its insurance policy with Valley Forge for lost business income and other expenses.

The insurance company denied the claim. That policy, as here, excluded coverage for flood and surface waters. *Compare* (*Id.* at 257) *with* (C.R. 65). In

---

[2] As discussed below, if Plaintiffs claim the water diffused into the ground, and then migrated into the home, the damage still would not be covered by the policy because of the exclusion for water below the surface of the ground. (*Infra* at 17). However, that claim is probably less likely because the top of the flower bed was above the foundation but below the wood flooring.

addition, the policy in the cited case, and the case at bar, excluded damages caused directly or indirectly by floor or surface water "regardless of any other cause or event that contributed concurrently or in any sequence to the loss." (*Id.*). The trial court granted summary judgment to the law firm.

This Court reversed and rendered judgment for the insurance company. The Court rejected the firm's argument that the character of the water had changed from flood or surface water to "plain old generic water." (*Id.*); *compare* (Brief for Plaintiff at 12)("Invading water is generic rather than surface water."). The Court found that the policy provisions were not ambiguous and concluded that the water had not changed in character to avoid the plain reading of the exclusion.

In reaching this conclusion, this Court distinguished the opinions cited by the law firm in *Sun Underwriters Insurance Co. v. Brinkley*, 233 S.W.2d 153 (Tex. Civ. App. – Fort Worth 1950, writ ref'd); *Transamerica Co. v. Raffkind*, 521 S.W.2d 935 (Tex. Civ. App. – Amarillo 1975, no writ), and *State Farm Lloyds v. Marchetti*, 962 S.W.2d 58 (Tex. App. – Houston [1st Dist.] 1997, pet. denied). Plaintiffs rely on those cases here. (Brief for Plaintiffs at 13). In the three cited cases, unlike here, the composition of the water was altered in some fashion. Equally as important, the insurance policies in those cases did not have the "lead in clause" excluding coverage regardless of other contributing causes. The Liberty Mutual policy here has that same controlling and distinguishing lead in clause.

In its summary, this Court pointed out that the storm deluged the area and created a large amount of surface water. Once the water entered downtown buildings, "it behaved as strong waters behave." 174 S.W.3d at 259. The water did not change or dilute its nature. "It simply flowed onward, as flood and surface water is wont to do, obeying the law of gravity and flowing into man-made underground structures." (*Id.*); *see also Texas Woman's University v. Methodist Hospital*, 221 S.W.3d 267, 279 (Tex. App. – Houston [1st Dist.] 2006, no pet.)(rainfall did not lose its designation as diffuse surface water under Water Code when the water ran off and moved by gravity even if channeled by man made changes to the natural formation of the land); *Michaelski v. Wright*, 444 S.W.3d 83 (Tex. App. – Houston [1st Dist.] 2014, no pet.)(discussion of primary holdings in *Texas Woman's Hospital*).

The same situation happened here although the volume of water was markedly less. The character of the water that entered Plaintiffs' home did not change. Both parties' summary judgment evidence revealed that "water… migrate[d] to the lower interior area below the wood floor of the Tsai residence." (C.R. 94)(HSA report). To quote this Court from *Valley Forge*: "It did not back up into a sewer line, cause a water main to burst, comingle with water from an underground swimming pool, or otherwise change or dilute its nature." As the water from Buffalo Bayou in *Valley Forge*, the water from the flower bed here, "as

15

flood and surface water is wont to do," obeyed the law of gravity and flowed under the wood flooring but above the foundation, a "man-made underground structure." 174 S.W.3d at 259. In principle, what happened here and in *Valley Forge* was the same, and the insurance policies in *Valley Forge* and here had the same exclusion and "lead in clause." The result should be the same.

The Liberty Mutual exclusion in plain and unambiguous language applies to damage caused by surface water, whether the surface water was "caused by or resulting from human…forces or act of nature." The water that fell upon the surface of the flower bed and the planter was the result of human forces by the sprinkler system and natural forces by rainfall. Any damage caused by this surface water is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. But for the surface water from the neighbor's watering and the rainfall, there would be no damage. Plaintiffs' argument that the water that ran across the surface of the planter or through the planter and entered their home is not "surface water" ignores the facts and settled Texas law. The exclusion for flood and surface water applied by its clear terms. *See also Crocker v. American National General Insurance Co.*, 211 S.W.3d 928 (Tex. App. – Dallas 2007, no pet.)(water flowing over man made elevated surface is "surface water" under policy exclusion).

**B.** **Plaintiffs' claim was excluded under the policy because the loss was caused by water under the surface.**

In addition to surface water, the Liberty Mutual policy specifically excludes damage caused by water below the surface of the ground. Thus, even if the water from Monsour's sprinkler system was not "surface water" after it went over the surface of the planter, any water damage is excluded anyway under the part of the exclusion that excludes coverage for "water…below the surface of the ground, including water which…seeps or leaks through a building,…foundation, or other structure; caused by or resulting from human or animal forces or any act of nature. (C.R. 65).

Plaintiffs' argument to avoid this exclusion is outlined in one page in their brief. (Brief for Plaintiffs at 16). They claim that the exclusion does not apply based on a single case from the Court of Appeals in 1982 that had different policy language. *Adrian Associates General Contractors v. National Surety Corp*., 638 S.W.2d 138, 140-141 (Tex. App.—Dallas 1982, writ ref'd n.r.e.), *approved*, *National Surety Corp. v. Adrian Associates*, 650 S.W.2d 67 (Tex. 1983)(per curiam). They made the same brief argument, relying on the same case, in the trial court. (C.R. 181).

As in this Court, Plaintiffs' reliance on *Adrian Associates* is misplaced because of a controlling difference in the policy language. The exclusion at issue in the cited case provided:

> In addition to the exclusions in the policy to which this endorsement is attached, this policy does not insure against:
>
> (c)(3) Water below the surface of the ground, including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors….

638 S.W.2d at 139. Based on this policy language, the Court concluded that subterranean waters subject to the exclusion referred only to water of a "natural origin" and would not include water from an artificial source. (*Id.* at 140). The Court observed, "Although the Insurance Company contends that the exclusion applies to all water whatever the source, we conclude that if it was intended to do so, then the Insurance Company would have said so." (*Id.*).

Well, that is exactly what happened here, perhaps in response to the opinion. The Liberty Mutual water damage exclusion, unlike the exclusion quoted by the Court in *Adrian Associates*, specifically defines "water damage" to include both surface water and water below the surface of the ground "*caused by or resulting from human or animal forces or any act of nature.*" (C.R. 65). The exclusion applies to all water below the surface of the ground, including that from a neighbor's sprinkler system that drains through the soil of a planting bed and then seeps into and runs over the adjacent building foundation. If the water from the sprinkler system and rainfall was not "surface water," it clearly had to be "water below the surface of the ground which seeps or leaks through a building,

18

foundation or other structure caused by human forces or any act of nature," which is also subject to a policy exclusion. (C.R. 65)(irrelevant words omitted). Plaintiffs' argument that the "water's origin was never subterranean" is either incorrect or means that the water was surface water subject to another policy exclusion. (Brief for Plaintiffs at 7). The argument also contradicts Plaintiffs' claim that the damage was due to saturated soil. (Brief for Plaintiffs at 14).

### C. The exclusion for water damage is not ambiguous.

A court should read all parts of an insurance policy together, giving meaning to every sentence, clause and word to avoid rendering any portion inoperative or meaningless. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 748 (Tex. 2006); *State Farm Lloyds v. Marchetti*, 962 S.W.2d 58, 60 (Tex. App. - Houston [1st Dist.] 1997, pet. denied). A policy provision is not ambiguous simply because the parties interpret it differently. (*Id.*). The ambiguity must be evident from the insurance policy itself and cannot be created by introducing evidence of intent outside the policy. (*Id.* at 747).

If an insurance policy provision has only one reasonable interpretation, it is not ambiguous. (*Id.* at 746). "Courts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even though the insured may suffer an apparent harsh result as a consequence." *Ohio Cas. Group of Ins. Cos. v. Chavez*, 942 S.W.2d 654, 658 (Tex. App. - Houston [14th Dist.] 1997, writ

19

denied) *quoting Vest v. Gulf Ins. Co.*, 809 S.W.2d 531, 533 (Tex. App.—Dallas 1991, writ denied). As Plaintiffs themselves point out: "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." (Brief for Plaintiffs at 9), *citing National Union Fire Insurance Co. v. CBI Industries*, 907 S.W.2d 517, 520 (Tex. 1995).[3]

The exclusions at issue in this case are not ambiguous. In *Valley Forge*, this Court held that the "surface water" and the lead-in language in the exclusion were not ambiguous. (*Id.* at 258)(Applying [the rules of contract interpretation], we conclude that the contested policy provisions in this case are not ambiguous. We consider the flood and surface water exclusion, in conjunction with the lead-in clause, to be dispositive of the issue of coverage…."). Nothing in the exclusion requires the water to come into direct contact with the damaged flooring or flow directly from the surface of the ground onto the damaged flooring. In fact, the lead-in language makes it clear that there are no such requirements.

In a similar way, the "water below the surface" exclusion is not ambiguous. In *Adrian Associates*, the only reason the Court in that case found "water below the surface of the ground" to be ambiguous was because it was not clear if it referred to all water or just water of natural origin. 638 S.W.2d at 140. The exclusion in this

---

[3] Plaintiffs' arguments based on their own reasonable interpretation of the policy apply only if the exclusions are ambiguous, which they are not. (Brief for Plaintiffs at 18-19); *State Farm Lloyds v. Marchetti*, 962 S.W.2d at 60; *Valley Forge Insurance Co. v. Hick Thomas & Lilienstern*, 174 S.W.3d at 257.

case does not have that ambiguity, because it clearly and unequivocally states that "water damage" includes both surface water and water below the surface of the ground "*caused by or resulting from human or animal forces or any act of nature.*" (emphasis added). To limit the water damage exclusion to "water below the surface of the ground" only if it is from natural subterranean origins is to ignore and render meaningless the "*caused by or resulting from human or animal forces or any act of nature*" language in the exclusion.

### D. The Court should affirm the summary judgment on grounds other than breach of contract.

Plaintiffs brought causes of action against Liberty Mutual for breach of contract and violations of the Deceptive Trade Practices Act and Insurance Code. (C.R. 24). Liberty Mutual moved for summary judgment on all Plaintiffs' common law and statutory causes of actions. (C.R. 34). The trial court granted the motion and ordered that Plaintiffs take nothing from Liberty Mutual on "all claims that Plaintiffs have pled or could have pled" against Liberty Mutual, which includes Plaintiffs' causes of action for breach of contract and statutory violations. (C.R. 415).

In this Court, Plaintiffs only challenged the trial court's ruling on the claim for breach of contract. (Brief for Plaintiffs at 9)(Plaintiffs only reference breach of contract). (*Id.* at 21)(Plaintiffs argue fact issue exists on whether Liberty Mutual breached the insurance contract). The Court should affirm the summary judgment

21

on all other claims because Plaintiffs never challenged that ruling. TEX. R. APP. P. 38.1(f); *Taylor v. Allstate Ins. Co.*, 356 S.W.3d 92 (Tex. App. – Houston [1ˢᵗ Dist.] 2011, pet. denied); *DiBello v. Charlie Thomas Ford*, 288 S.W.3d 118 (Tex. App. - Houston [1ˢᵗ Dist.] 2009, no pet.); *McAfee Inc. v. Agilysys, Inc.*, 316 S.W.3d 820 (Tex. App. – Dallas 2010, no pet.).

Even so, the Court may affirm the summary judgment on these causes of action on the merits. Because there was no breach of contract, Plaintiffs extra-contractual claims fail as well under the facts of this case. *See Gates v. State Farm County Mutual Ins. Co. of Texas*, 53 S.W.3d 826, 830 (Tex. App. – Dallas 2001, no pet.)(because policyholders lost on breach of contract coverage claims, they could not, as a matter of law, recover on their common law or statutory bad faith claims); *Betco Scaffolds Co., Inc. v. Houston United Cas. Insurance Co.*, 29 S.W.3d 341, 348 (Tex. App. – Houston [14ᵗʰ Dist.] 2000, no pet.)(same).

In *Liberty National Fire Insurance Co. v. Akin,* 927 S.W.2d 627, 629 (Tex. 1996), the Supreme Court recognized that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." *See also Republic Insurance Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex. 1995); *Bunting v. State Farm Lloyds*, 2000 WL 191672 at *4 (N.D. Tex. 2000)(not published)("Having found that defendant did not breach the insurance policy, these extra-contractual claims fall like a house of cards.").

The requirement of a valid breach of contract claim, as articulated by the Supreme Court in *Akin*, applies to liability for common law claims for bad faith as well as statutory claims under the Texas Insurance Code and the Texas Deceptive Trade Practices Act. *Progressive County Mutual Insurance Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005)(an insurer's liability for violation of the Texas Insurance Code and Deceptive Trade Practices Act incorporates the same standard as common law bad faith); *Spicewood Summit Office Condominiums Association, Inc. v. American First Lloyd's Insurance Co.*, 287 S.W.3d 461, 468 (Tex. App. - Austin 2009, pet. denied)(same); *see also Douglas v. State Farm Lloyds*, 37 F.Supp.2d 532, 544 (S.D. Tex. 1999)(extra-contractual tort claims pursuant to the Texas Insurance Code and Deceptive Trade Practices Act require the same predicate for recovery as bad faith causes of action). Because Plaintiffs' breach of contract claim fails, their claims for both statutory and common law bad faith fail as well. As a result, the Court should affirm the summary judgment on all claims on both procedural and substantive grounds.[4]

---

[4] There are two limited exceptions to the breach of contract requirement as outlined by the Court in *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338 (Tex. 1995): (1) the carrier commits an act so extreme that it would cause an injury independent of the policy claim; or (2) the carrier fails to investigate the claim timely. Plaintiffs have not alleged either exception here.

23

**Conclusion**

The summary judgment in favor of Liberty Mutual should be affirmed.

Respectfully submitted,

SHEEHY, WARE & PAPPAS, P.C.

By:_____

Richard A. Sheehy
State Bar No. 18178600
J. Mark Kressenberg
State Bar No. 11725900
Shelley Rogers
State Bar No. 17186250
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1003
(713) 951-1000 – Telephone
(713) 951-1199 – Facsimile
Email: rsheehy@sheehyware.com

***Attorneys for Defendant and Appellee***
***Liberty Mutual Insurance Company***

**Certificate of Compliance**

Pursuant to Rule 9.4(i)(3), I certify that this Brief for Appellee, beginning with the Statement of Facts, and ending after the Conclusion, contains 5,097 words, as measured by a computer program used to prepare the brief.

_____

Richard A. Sheehy

24

## Certificate of Service

This will certify that a true and correct copy of this document has been forwarded to all counsel of record pursuant to the Texas Rules of Appellate Procedure on the 11th day of February 2015.

*Via E-Service*
Daniel F. Crowder
Crowder, LLP
2211 Norfolk, Suite 610
Houston, Texas  77098

_____
Richard A. Sheehy

2264081

25